David E. Stanley (SBN 144025)
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071-1514
Telephone: (213) 457-8000
Facsimile: (213) 457-8080
dstanley@reedsmith.com

Michael X. Imbroscio (pro hac vice)
Phyllis A. Jones (pro hac vice)
Kathleen E. Paley (pro hac vice)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone: (202) 662-5868
Facsimile: (202) 778-5868
mimbroscio@cov.com
pajones@cov.com
kpaley@cov.com

Attorneys for Defendant
Eli Lilly and Company

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIN HEXUM and NICK HEXUM,<br><br>  Plaintiffs,<br><br>  v.<br><br>ELI LILLY AND COMPANY, an Indiana corporation,<br><br>  Defendant. | No.: 2:13-cv-2701 SVW-MANx<br><br>**MOTION IN LIMINE TO BAR EVIDENCE AND TESTIMONY RELATING TO FOREIGN LABELING**<br><br>Date:     April 27, 2015<br>Time:     3:00 PM<br>Location: Courtroom 6<br>Judge:    Hon. Stephen V. Wilson |

# NOTICE OF MOTION

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on April 27, 2015, at 3:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 6 of the United States District Court, Central District of California, Western District, located at 312 N. Spring Street, Los Angeles, California 90012, Defendant Eli Lilly and Company will move the Court to exclude evidence and testimony related to foreign labeling.

The motion will be based on this notice of motion, the memorandum of points and authorities set forth below, and counsel's declaration and exhibits thereto. This motion is made following a conference of counsel pursuant to L.R. 7-3, which took place on March 16, 2015.

DATED: March 30, 2015

Respectfully Submitted,

_____
David E. Stanley
Katherine W. Insogna
REED SMITH LLP

Michael X Imbroscio (*pro hac vice*)
Phyllis A. Jones (*pro hac vice*)
Kathleen E. Paley (*pro hac vice*)
COVINGTON & BURLING LLP

Attorneys for Defendant
ELI LILLY AND COMPANY

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DC: 5640722-5

MOTION IN LIMINE TO BAR EVIDENCE OR TESTIMONY RELATING TO FOREIGN LABELING

**TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................ 1

BACKGROUND .......................................................................................................... 1

ARGUMENT ................................................................................................................ 5

I.   Cymbalta's Foreign Labeling is Irrelevant. ......................................................... 5

II.  Evidence and Testimony Relating to Foreign Labeling Will
     Confuse the Issues and Mislead the Jury. ............................................................ 8

III. Admitting Foreign Labeling Evidence Will Lead to "Mini-Trials"
     on Ancillary Issues and Unfairly Prejudice Lilly. ................................................ 9

CONCLUSION .......................................................................................................... 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) ................................................................................ 9

*Buzzell v. Bliss*,
   358 N.W.2d 695 (Minn. Ct. App. 1985) ............................................................... 9

*Carlin v. Upjohn Co.*,
   920 P.2d 1347 (Cal. 1996) .................................................................................... 5

*Deviner v. Electrolux Motor, AB*,
   844 F.2d 769 (11th Cir. 1988) .............................................................................. 9

*Doe v. Hyland Therapeutics Div.*,
   807 F. Supp. 1117 (S.D.N.Y. 1992) ..................................................................... 6

*Harrison v. Wyeth Labs. Div. of Am. Home Prods. Corp.*,
   510 F. Supp. 1 (E.D. Pa. 1980), *aff'd sub nom.*, *Harrison v. Wyeth Labs., a Div. of Am. Home Prods. Corp.*, 676 F.2d 685 (3d Cir. 1982) ................... 6

*Hurt v. Coyne Cylinder Co.*,
   956 F.2d 1319 (6th Cir. 1992) .............................................................................. 8

*In re Baycol Prods. Litig.*,
   532 F. Supp. 2d 1029 (D. Minn. 2007), *aff'd*, 596 F.3d 884 (8th Cir. 2010) .................................................................................................................... 8

*In re Fosamax Prods. Liab. Litig.*,
   No. 1:06-CV-5087 (JFK), 2009 WL 3398930 (S.D.N.Y. Oct. 21, 2009) .................................................................................................................... 6

*In re Seroquel Prods. Liab. Litig.*,
   601 F. Supp. 2d 1313 (M.D. Fla. 2009) ......................................................... 8, 10

*In re Seroquel Prods. Liab. Litig.*,
   No. 6:06-MD-1769-ORL-22-DAB, 2009 WL 223140 (M.D. Fla. Jan. 30, 2009), *aff'd*, 601 F. Supp. 2d 1313 (M.D. Fla. 2009) ............................... 5, 6, 7

*In re Trasylol Prods. Liab. Litig.*,
   709 F. Supp. 2d 1323 (S.D. Fla. 2010) ................................................................. 9

*In re Viagra Prods. Liab. Litig.*,
   658 F. Supp. 2d 950 (D. Minn. 2009) ............................................................. 5, 8

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*In re Vioxx Prods. Liab. Litig.*,
    448 F. Supp. 2d 741 (E.D. La. 2006) .................................................................. 8

*Katzenmeier v. Blackpowder Prods., Inc.*,
    628 F.3d 948 (8th Cir. 2010) .............................................................................. 8

*McDowell v. Eli Lilly & Co.*,
    --- F. Supp. 3d ---, 2014 WL 5801604 (S.D.N.Y. Nov. 7, 2014) .............................. 7

*McDowell v. Eli Lilly & Co.*,
    No. 13-CV-3786, 2015 WL 845720 (S.D.N.Y. Feb. 26, 2015) ................................ 7

*Meridia Prods. Liab. Litig. v. Abbott Labs.*,
    447 F.3d 861 (6th Cir. 2006) ........................................................................... 5, 8

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
    No. CV 05-6838 CAS, 2013 WL 6535164 (C.D. Cal. Dec. 9, 2013) ..................... 10

*Sherry v. Massey-Ferguson, Inc.*,
    No. 1:96-CV-76, 1997 WL 480893 (W.D. Mich. June 5, 1997) ............................. 9

*United States v. Vazquez–Torres*,
    92 F. App'x 502 (9th Cir. 2004) ......................................................................... 9

*Zammit v. Shire US, Inc.*,
    415 F. Supp. 2d 760 (E.D. Mich. 2006) ............................................................... 5

**Statutes**

Federal Food, Drug, and Cosmetic Act, § 201(m), 21 U.S.C. § 321 ............................. 2

**Rules**

Fed. R. Evid. 401 ................................................................................................... 5, 7

Fed. R. Evid. 403 ................................................................................................... 8, 11

**Regulations**

Title 21 C.F.R. ........................................................................................................... 2

## MEMORANDUM OF POINTS AND AUTHORITIES

In the face of a mountain of caselaw, Plaintiffs apparently seek to make a centerpiece of this trial the content of Cymbalta's foreign labeling in the European Union and elsewhere. The content of Cymbalta's foreign labels, however, does not meet even the basic standards of relevance in this lawsuit involving a plaintiff from California prescribed a medicine by a doctor in California based on the United Stated Package Insert ("USPI") reviewed and approved by the U.S. Food and Drug Administration ("FDA"). Moreover, any minimal relevance is dwarfed by the unfair prejudice to Lilly that any presentation of this evidence would entail. Cymbalta's foreign labels are approved according to standards in the European Union and foreign countries for medicines used in those markets, and jurors lack the necessary context to assess foreign labeling, which is shaped by the regulatory standards and conventions of each country. Admission of foreign labeling would also unfairly prejudice Lilly by allowing Plaintiffs to make a misleading and simplistic argument to the jury that Lilly somehow kept information from U.S. doctors, which would in turn by necessity require Lilly to marshal evidence and witnesses to explain the labels' variations through an account of the regulatory history of each foreign label, prompting a series of time-consuming mini-trials on those issues. The Court should thus exclude evidence and testimony concerning Cymbalta's foreign labeling because it is irrelevant, and to the extent it has any probative value, that is outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time.

## BACKGROUND

Cymbalta, or duloxetine, is a serotonin and norepinephrine reuptake inhibitor ("SNRI") that is manufactured by Lilly and marketed in the United States and other countries. In the United States, Cymbalta is approved for the treatment of major depressive disorder ("MDD"), general anxiety disorder ("GAD"), diabetic peripheral neuropathic pain ("DPNP"), fibromyalgia, and chronic musculoskeletal pain. *See*

Declaration of Kathleen E. Paley ("Paley Decl."), Ex. A (2012 USPI) at CYM00061439. In the European Union, Cymbalta is approved for the treatment of MDD, GAD, DPNP, and, under the brand name Yentreve, for stress urinary incontinence ("SUI").[1] The FDA regulates prescription medicines that are marketed in the United States, including any labeling associated with the medicine. *See* Title 21 C.F.R.[2] Likewise, the European Medicines Agency ("EMA") regulates medicines in the EU.[3]

As required by FDA regulations, Cymbalta's U.S. label was crafted through an iterative process of data sharing, consultation, and revision between Lilly and FDA, culminating in FDA's approval of Cymbalta along with the USPI text in 2004. *See* Paley Decl., Ex. C (FDA Approval Letter and Approved Label ("2004 USPI")). Since then, the FDA has re-approved the USPI more than thirty times with various updates and changes Lilly has proposed to the text over the last decade. The initial approved label contained the FDA's then-recently-instituted "class labeling" on discontinuation symptoms that FDA mandated for all antidepressants in the class. *See* Paley Decl., Ex. I (Perahia Dep.) at 153:3-20. That labeling included model language for the dosage section of the labeling and two paragraphs discussing the class-wide

---

[1] European Medicines Agency, *Cymbalta: duloxetine*, *available at* http://www.ema.europa.eu/ema/index.jsp?curl=pages/medicines/human/medicines/000572/human_med_000732.jsp&mid=WC0b01ac058001d124 (last visited Mar. 30, 2015); European Medicines Agency, *Yentreve: duloxetine*, *available at* http://www.ema.europa.eu/ema/index.jsp?curl=pages/medicines/human/medicines/000545/human_med_001164.jsp&mid=WC0b01ac058001d124 (last visited Mar. 30, 2015).

[2] The term "labeling" means all labels and other written, printed, or graphic matters (1) upon any medicine or any of its containers or wrappers, or (2) accompanying such article. Federal Food, Drug, and Cosmetic Act, § 201(m), 21 U.S.C. § 321.

[3] European Medicines Agency, *About Us*, *available at* http://www.ema.europa.eu/ema/index.jsp?curl=pages/about_us/general/general_content_000235.jsp&mid= (last visited Mar. 30, 2015).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

experience with this adverse event and instructions for minimizing and managing the risk of these discontinuation symptoms.

Indeed, regulatory bodies routinely use the tool of class labeling when they want all manufacturers to deliver a consistent message to prescribers in their jurisdiction about a particular risk. Thus, although Lilly submits common proposed labeling language and data to the regulatory body in each market where it seeks approval for a medicine, a label can be modified to fit the template, guidance, and data presentation standards of each region or country. *See* Paley Decl., Ex. B (Hoog Dep.) at 182:4-183:25; 331:20-333:4 (Dec. 10, 2014); *Id.* at 182:5-12 ("Labels often diverge based on the interest of the [regulatory] reviewers and other, perhaps, cultural or healthcare delivery system factors and so on."). Class labeling presents a common situation where labels for medicines will vary across countries. *See* Paley Decl., Ex. D (Mescher Dep.) at 64:5-7 (Dec. 9, 2014) ("Class labeling . . . will cause the labels to vary in the exact text that's presented.").

Just as the U.S. labeling for Cymbalta contains FDA's mandated discussion of the class-wide risk of discontinuation symptoms, EMA has imposed a similar class-wide template for the antidepressant class. That class labeling included a template for companies to set forth the specific clinical trial experience for the respective medicines. *See* Paley Decl., Ex. E (Pls.' Ex. 86) at CYM-01865850 - 5854. While FDA chose to communicate the risk in one manner, EMA decided to require companies to present the same essential risk information in a different format. As a function of this complex international regulatory dynamic, the final Cymbalta labels across countries differ in their wording, emphasis, or representation of data, even while their fundamental presentation of the safety information is conceptually consistent. Hoog Dep. at 182:4-183:25; Mescher Dep. at 61:1-64:11.

Although Ms. Hexum's diagnosis and treatment with Cymbalta occurred in the United States, Plaintiffs have built their legal argument in large part around Cymbalta's foreign labels, primarily the Summary of Product Characteristics (the

"SPC" or "EU label"), but also those from Israel, Malaysia, and Thailand. *See* Pls.' Opp'n to Def.'s Mot. for Summ. J. at 19 n.8, *Herrera v. Eli Lilly & Co.*, No. 2:13-cv-2702 SVW-MANx ("Herrera SJ Opp'n"). Plaintiffs indicate they intend to rely on other Cymbalta labels from foreign jurisdictions. *Id.* All the labels' warnings about discontinuation symptoms contain the same core messages: They warn that DEAEs can occur after stopping treatment with Cymbalta; identify the specific symptoms that doctors should look for; note the possibility that symptoms can be severe; and recommend that patients be tapered off the medicine through a gradual reduction in the dosage. *See* 2004 USPI at CYM-00728001 - 8002, CYM-00728012; Paley Decl., Ex. F, (Pls.' Ex. 356 ("SPC")) at CYM-01871486, CYM-01871486, CYM-01871493. By parsing the labels' text, however, Plaintiffs point out differences in language or presentation of data that they claim render Cymbalta's U.S. label "materially deficient and misleading." *See* Herrera SJ Opp'n at 18.[4]

Plaintiffs seek to focus this trial on Cymbalta's foreign labeling, asserting that "when the U.S. Cymbalta label is compared to the label used in Europe, there is strong evidence that Lilly was deliberately concealing material information from U.S. consumers." *Id.* Plaintiffs repeatedly used foreign labeling during fact and expert discovery, extensively questioning Lilly company witnesses about the meaning of the EU label, the genesis of its language, and its differences with the USPI. *See* Hoog Dep. 158:11-161:25; 181:5-185:7; Mescher Dep. 49:24-78:12, 109:3-25; 117:19-

---

[4] For example, the USPI uses a threshold to identify discontinuation symptoms, listing those that were reported by more than a certain percentage (2%, later changed to 1%) of patients in clinical trials. *See* 2004 USPI at CYM-00728001 - 8002. The SPC provides an aggregate rate, identifying the total percentage of clinical trial patients who reported any discontinuation symptom. *See* SPC at CYM-01871481. The USPI recommends "a gradual reduction in the dose" when discontinuing Cymbalta treatment, and advises that "[i]f intolerable symptoms occur . . . then resuming the previously prescribed dose may be considered" followed by "decreasing the does but at a more gradual rate." 2004 USPI at CYM-00728012. The SPC makes the same tapering recommendation, advising additionally that the dose should be reduced "over a period of at least one to two weeks." SPC at CYM-01871483.

1  118:17; 146:14-147:10; 150:20-151:21.  Plaintiffs marked versions of the SPC in
2  depositions, *see* Hoog Dep. Exs. 9, 10; Mescher Dep. Ex. 5, and asked variants of the
3  rhetorical question "If you are a doctor in Europe, do you believe that you should get
4  the same information about a drug that you would get if you were a doctor in the
5  United States?"  Hoog Dep. 182:13-183:17.  Plaintiffs' experts Joseph Glenmullen
6  and Louis Morris also referred to or quoted the EU label extensively in their reports.
7  *See* Paley Decl., Ex. G (Pls.' Ex. 182) at 35-38; Paley Decl., Ex. H (Pls.' Ex. 185) at
8  12-14.

## ARGUMENT

### I. Cymbalta's Foreign Labeling is Irrelevant.

Evidence of Cymbalta's foreign labeling should be excluded in the first instance because it does not meet the basic threshold of relevance under Rule 401.  As many courts have held, "foreign [prescription] labels and . . . foreign regulatory actions have no relevance" in a products liability action concerning medicines and labels created according to U.S. regulatory standards.  *In re Seroquel Prods. Liab. Litig.*, No. 6:06-MD-1769-ORL-22-DAB, 2009 WL 223140, at *6 (M.D. Fla. Jan. 30, 2009), *aff'd*, 601 F. Supp. 2d 1313 (M.D. Fla. 2009); *see also In re Viagra Prods. Liab. Litig.*, 658 F. Supp. 2d 950, 965 (D. Minn. 2009) (excluding "discussion of foreign regulatory actions [as] irrelevant").

In this failure-to-warn case, the issue is whether the warning in Cymbalta's U.S. label was adequate to warn U.S. doctors of the risk of potential symptoms occurring when discontinuing the medicine.  Adequacy is determined under California law, and while FDA regulations and approvals are "highly relevant" to this inquiry, *Carlin v. Upjohn Co.*, 920 P.2d 1347, 1384 (Cal. 1996), other governments' regulatory decisions are "simply irrelevant," *Zammit v. Shire US, Inc.*, 415 F. Supp. 2d 760, 767 (E.D. Mich. 2006) (applying Michigan law).  Highlighting the "different priorities" of U.S. and EU regulators, the Sixth Circuit has held that the "more detailed instructions" contained in a medicine's European label did not "create[] a triable issue

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

of fact" on the adequacy of a U.S. label. *Meridia Prods. Liab. Litig. v. Abbott Labs.*, 447 F.3d 861, 867 (6th Cir. 2006). A foreign label, in which each word has been reviewed, approved, or sometimes mandated by that country's regulator, is "akin to evidence of foreign legal standards," *In re Seroquel Prods.*, 2009 WL 223140, at *6, which certainly do not apply in this case.

Courts have long recognized each country's interest in applying its own law and regulatory standards to the medicines that are manufactured and sold in its market. *See In re Fosamax Prods. Liab. Litig.*, No. 1:06-CV-5087 (JFK), 2009 WL 3398930, at *4 (S.D.N.Y. Oct. 21, 2009) ("[T]he foreign country in which the product was sold and ingested has the foremost interest in defining the standard of conduct which pharmaceutical companies must follow in distributing products under its regulatory scheme."). In the pharmaceutical arena, one court observed:

> The forum whose market consumes the product must make its own determination as to the levels of safety and care required. That forum has a distinctive interest in explicating the controlling standards of behavior, and in enforcing its regulatory scheme. The standards of conduct implemented . . . will reflect the unique balance struck between the benefit each market derives from the product's use and the risks associated with that use; between the community's particular need for the product and its desire to protect its citizens from what it deems unreasonable risk. . . . [E]ach community faces distinct demands, and has unique concerns that make it peculiarly suited to make this judgment.

*Doe v. Hyland Therapeutics Div.*, 807 F. Supp. 1117, 1129 (S.D.N.Y. 1992). Although articulated in the forum non conveniens context, *Doe*'s principle that products and their safety standards are reflections of the regulatory environments of their jurisdiction applies with equal force here to Cymbalta's labeling.

While their core messages remain constant, each Cymbalta label is forged by "[e]ach country[']s . . . own legitimate concerns and its own unique needs . . . ." *Harrison v. Wyeth Labs. Div. of Am. Home Prods. Corp.*, 510 F. Supp. 1, 4 (E.D. Pa. 1980), *aff'd sub nom.*, *Harrison v. Wyeth Labs., a Div. of Am. Home Prods. Corp.*,

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

676 F.2d 685 (3d Cir. 1982). Country-specific variation is clear not only in Cymbalta's label, but in other regulatory outcomes, which Plaintiffs' expert admits may result from the different priorities and prerogatives of the FDA and other regulators such as the EMA. *See* Morris Dep. 249:3-251:7 (Nov. 24, 2014). For example, Fibromyalgia, the condition for which Ms. Hexum was treated with Cymbalta, is not an approved indication in the European Union, whereas duloxetine is approved to treat SUI in Europe (under the brand name Yentreve) but not in the United States. Many aspects of Cymbalta's marketing in foreign countries, including its label, are a product of those countries' regulatory schemes, which "have no relevance" in this action. *In re Seroquel Prods.*, 2009 WL 223140, at *6. By attempting to introduce foreign labeling, Plaintiffs imply that FDA should adopt the different regulatory standards of other countries, a proposition left to Congress or the agency to decide, not a jury.

Judge Sweet's recent decision in *McDowell v. Eli Lilly & Co.* is especially instructive. There, Judge Sweet had granted summary judgment for Lilly, holding that Cymbalta's discontinuation warning was "adequate as a matter of law because it is 'accurate, clear, consistent on its face' and 'portrays with sufficient intensity the risk involved in taking the drug.'" --- F. Supp. 3d. ---, 2014 WL 5801604, at *15 (S.D.N.Y. Nov. 7, 2014) (citation omitted). In seeking reconsideration of that ruling, Plaintiffs' counsel urged Judge Sweet to consider, among other items, Cymbalta's European label. Judge Sweet denied Plaintiffs' motion. *See McDowell v. Eli Lilly & Co.*, No. 13-CV-3786, 2015 WL 845720, at *1-6 (S.D.N.Y. Feb. 26, 2015). In so ruling, Judge Sweet rejected Plaintiff's and his expert's reliance on Cymbalta's European label, reasoning that "[t]he mere existence of a differently structured and written European label does not establish that the U.S. label is insufficient, misleading, or legally inadequate." *Id.* at *5. This Court should reach the same conclusion and exclude evidence and testimony relating to Cymbalta's foreign labeling as irrelevant under Rule 401.

## II. Evidence and Testimony Relating to Foreign Labeling Will Confuse the Issues and Mislead the Jury.

Even if foreign labeling had some minimal relevance, the Court should nevertheless exclude this evidence under Federal Rule of Evidence 403 because any probative value is substantially outweighed by the danger of confusing the issues and misleading the jury. Because "American regulators have different priorities . . . than their European counterparts," *Meridia Prods. Liab. Litig.*, 447 F.3d at 867, introducing evidence of European or other countries' regulatory standards risks substantial jury confusion. *See, e.g.*, *In re Viagra Prods.*, 658 F. Supp. 2d at 965-66 (excluding expert testimony on foreign regulatory information under Rules 401 and 403). Jurors lack the "context concerning the [foreign] regulatory schemes and decisionmaking processes" to properly evaluate medicines or labels that are products of that jurisdiction. *See In re Seroquel Prods. Liab. Litig.*, 601 F. Supp. 2d 1313, 1318 (M.D. Fla. 2009) (excluding evidence of foreign regulatory actions because the jury did not have "any framework within which to evaluate the meaning of that evidence"); *cf. In re Vioxx Prods. Liab. Litig.*, 448 F. Supp. 2d 741, 748 (E.D. La. 2006) ("An American jury would also have no good means of evaluating whether a given foreign label or marketing scheme was adequate[.]"). The introduction of evidence predicated on the rules and standards of other countries would inject confusion about which standards jurors should consider in this case. *In re Baycol Prods. Litig.*, 532 F. Supp. 2d 1029, 1054 (D. Minn. 2007) (excluding testimony about foreign regulatory actions, which, "in a case that is governed by domestic law, would likely cause jury confusion"), *aff'd*, 596 F.3d 884 (8th Cir. 2010).

Recognizing this inevitable juror confusion, courts routinely exclude foreign regulatory materials in products liability actions across many industries. *See, e.g.*, *Katzenmeier v. Blackpowder Prods., Inc.*, 628 F.3d 948, 950 n.4 (8th Cir. 2010) (collecting cases); *Hurt v. Coyne Cylinder Co.*, 956 F.2d 1319, 1327 (6th Cir. 1992) (finding that testimony about British safety device for chemical tank was excludable);

1  *Deviner v. Electrolux Motor, AB*, 844 F.2d 769, 773 (11th Cir. 1988) (affirming
2  exclusion of Swedish law and statistics about chain saws "to avoid confusing the
3  jury"); *Sherry v. Massey-Ferguson, Inc.*, No. 1:96-CV-76, 1997 WL 480893, at *2
4  (W.D. Mich. June 5, 1997) (holding evidence of European legal standards and
5  requirements concerning automobile passenger seats "will unnecessarily confuse the
6  jury"); *Buzzell v. Bliss*, 358 N.W.2d 695, 696 (Minn. Ct. App. 1985) (affirming
7  exclusion of English law requirements of safety device on punch press under
8  Minnesota's equivalent of Rule 403).

9       The Court should do the same here.  As discussed above, in the highly regulated
10 industry of prescription medicine, product labeling is shaped by the prerogatives of
11 each country's regulatory body, the specific needs of the local population, and
12 conventions of the market, factors that a jury would need as relevant background to
13 fairly evaluate Cymbalta's foreign labels and compare them to the USPI.  However,
14 an influx of evidence about foreign regulatory schemes could further muddle the
15 issues about which laws and standards apply in this action.  Therefore, this court
16 should preclude foreign labeling from the outset because whatever probative value
17 "foreign label changes" may have to this litigation is "greatly overmatched by the jury
18 confusion, waste of time, and unfair prejudice that would result" if admitted.  *In re*
19 *Trasylol Prods. Liab. Litig.*, 709 F. Supp. 2d 1323, 1336 (S.D. Fla. 2010) (citation and
20 internal quotation marks omitted).

21 **III.**    **Admitting Foreign Labeling Evidence Will Lead to "Mini-Trials" on**
22        **Ancillary Issues and Unfairly Prejudice Lilly.**

23      The Ninth Circuit recognizes district courts' "concern[s] about the potential to
24 confuse the jury and develop a mini-trial on an ancillary issue," *United States v.*
25 *Vazquez–Torres,* 92 F. App'x 502, 504 (9th Cir. 2004), and their discretion to limit
26 evidence in order to avoid such trial pitfalls, *Blackie v. Barrack*, 524 F.2d 891, 906
27 n.22 (9th Cir. 1975) (District courts may "exercise discretion in the conduct of the
28 trial, to prevent a time-consuming series of mini-trials.").  Admitting evidence of

Cymbalta's foreign labeling would lead to precisely those undesirable consequences: "'a series of 'mini-trials' regarding the grounds for the decisions and the regulatory schemes of the' various [jurisdictions] involved." *Negrete v. Allianz Life Ins. Co. of N. Am.*, No. CV 05-6838 CAS (MANx), 2013 WL 6535164, at *1 (C.D. Cal. Dec. 9, 2013) (discussing evidence of different state insurance regulations) (quoting *In re Seroquel Prods.*, 601 F. Supp. 2d at 1318). Applying the rationale articulated in the context of foreign pharmaceutical regulatory evidence, in *Negrete*, Judge Snyder excluded evidence of actions taken by different states' insurance regulators and the standards imposed by those regulators, noting that such evidence "would not compel a finding of liability in this case" and would sidetrack the trial with disputes about other states' regulatory schemes. *Id.*

In order to explain the language variations in Cymbalta's foreign labels, Lilly would have to marshal evidence from across the globe to present translations of the non-English labels as well as to provide an account of the development of each foreign label, information that bears virtually no relationship to the issues in this lawsuit. Plaintiffs will no doubt dispute Lilly's regulatory account, resulting in a sideshow on foreign regulatory schemes that will distract the jury from the core questions in the litigation and overcomplicate the trial.

As such, the admission of foreign labeling unfairly prejudices Lilly by forcing it to choose between allowing such misleading evidence to stand unexplained or alternatively, overwhelming the jury with time-consuming, complicated contextualizing evidence about the regulatory histories of each label. In *In re Seroquel Products Liability Litigation*, the Middle District of Florida aptly described this catch-22:

> To admit evidence about the foreign regulators' actions regarding Seroquel without providing context concerning the regulatory schemes and decision-making processes involved would strip the jury of any framework within which to evaluate the meaning of that evidence. Absent such background and context, a jury might be more inclined to

> abdicate its responsibilities and defer to the . . . decisions of three foreign regulators regarding Seroquel's safety. Hence, precluding AstraZeneca from offering such contextual evidence would unfairly prejudice the company. On the other hand, allowing AstraZeneca to introduce this evidence would result in a series of "mini-trials" regarding the grounds for the decisions and the regulatory schemes of the three foreign countries involved. This would confuse the jury and waste everyone's time. For these reasons . . . the prejudicial effect of this evidence substantially outweighs its probative value. Finally . . . a limiting instruction would not suffice in this case; it would neither alleviate the significant risk of jury confusion and waste of time, nor would it cure the substantial prejudice AstraZeneca would suffer if evidence of regulatory actions were admitted at trial.

601 F. Supp. 2d at 1318.

Plaintiffs use foreign labeling to transform the question of the adequacy of Cymbalta's USPI into a question of its similarity to foreign labels. This superficial and simplistic argument is misleading because it encourages jurors -- unwittingly or not -- to judge the label by other countries' standards. Further, it places the burden on Lilly to present the more complicated reality about differences between countries' regulatory systems, evidence that is minimally relevant to this case. To avoid opening the door to the confusion, delay, and prejudice that foreign labeling will cause, this evidence should be excluded under Rule 403.

# CONCLUSION

For the foregoing reasons, Lilly respectfully requests that the Court exclude Plaintiffs' evidence and testimony related to Cymbalta's foreign labeling, including foreign labels that Plaintiffs have now identified or will in the future.

DATED: March 30, 2015                    Respectfully Submitted,


/s/ David E. Stanley
David E. Stanley
REED SMITH LLP

Michael X Imbroscio (*pro hac vice*)
Phyllis A. Jones (*pro hac vice*)
Kathleen E. Paley (*pro hac vice*)
COVINGTON & BURLING LLP

Attorneys for Defendant
ELI LILLY AND COMPANY