David E. Stanley (SBN 144025)
Katherine W. Insogna (SBN 266326)
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071-1514
Telephone: (213) 457-8000
Facsimile: (213) 457-8080
dstanley@reedsmith.com
kinsogna@reedsmith.com

Michael X. Imbroscio *(pro hac vice)*
Phyllis A. Jones *(pro hac vice)*
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone: (202) 662-5868
Facsimile: (202) 778-5868
mimbroscio@cov.com
pajones@cov.com

Attorneys for Defendant
Eli Lilly and Company

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIN HEXUM AND NICK HEXUM,<br><br>             Plaintiffs,<br><br>     vs.<br><br>ELI LILLY AND COMPANY, an Indiana corporation,<br><br>             Defendant. | Case No. CV 13-02701−SVW−MAN<br><br>**LILLY'S NOTICE OF MOTION AND MOTION IN LIMINE TO EXCLUDE EVIDENCE AND ARGUMENT ON LILLY'S ALLEGED "BAD COMPANY" CONDUCT**<br><br>Date:       April 27, 2015<br>Time:       3:00 PM<br>Location:  Courtroom 6<br>Judge:  Hon. Stephen V. Wilson |

# NOTICE OF MOTION

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on April 27, 2015, at 3:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 6 of the United States District Court, Central District of California, Western District, located at 312 N. Spring Street, Los Angeles, California 90012, Defendant Eli Lilly and Company will move the Court to exclude evidence and argument on Lilly's alleged "bad company" conduct pursuant to Federal Rules of Evidence 401, 403, 404, and 702.

The motion will be based on this notice of motion, the memorandum of points and authorities set forth below, and counsel's declaration and exhibits thereto. This motion is made following a conference of counsel pursuant to L.R. 7-3, which took place on March 16, 2015.

DATED: March 30, 2015

                          REED SMITH LLP

                          By  */s/ David E. Stanley*
                              David E. Stanley
                              REED SMITH LLP

                              Michael X Imbroscio *(pro hac vice)*
                              Phyllis A. Jones *(pro hac vice)*
                              Kathleen E. Paley *(pro hac vice)*
                              COVINGTON & BURLING LLP

                              Attorneys for Defendant
                              ELI LILLY AND COMPANY

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iv

PRELIMINARY STATEMENT ......................................................................................... 1

FACTUAL BACKGROUND .............................................................................................. 1

    A.    Evidence and Argument on Lilly's Financial Performance ................. 2

    B.    Evidence and Argument Concerning Zyprexa and Lilly's Settlement Regarding Zyprexa ............................................................. 4

    C.    Evidence and Argument That Lilly Allegedly Pursued A Deliberate Campaign to Mislead Physicians About Cymbalta's Discontinuation Risks ............................................................................. 4

    D.    Evidence and Argument on Alleged Unethical, Immoral, or Otherwise "Bad Company" Conduct or Motives .................................. 5

ARGUMENT ........................................................................................................................ 6

    A.    Applicable Legal Standards .................................................................. 6

    B.    Evidence and Argument on Lilly's Financial Performance Is Inadmissible Because It Is Irrelevant and Prejudicial ........................... 7

        1.    Evidence and Argument on Financial Performance Is Irrelevant ..................................................................................... 7

        2.    Evidence and Argument on Financial Performance Is Prejudicial .................................................................................. 9

        3.    Evidence and Argument on Financial Performance Will Waste Time ............................................................................. 10

    C.    Evidence and Argument Concerning Zyprexa and Lilly's Settlement Regarding Zyprexa Is Irrelevant and Prejudicial, and Such Evidence Constitutes Improper Character Evidence ................ 11

    D.    Evidence and Argument That Lilly Allegedly Pursued A Deliberate Campaign to Mislead Physicians About Cymbalta's Discontinuation Risks Is Inadmissible ............................................... 12

    E.    Evidence and Argument on Lilly's Other Alleged Unethical, Immoral, or Otherwise "Bad Company" Conduct or Motives Should Be Excluded ........................................................................... 15

CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ake v. Gen. Motors Corp.*,
  942 F. Supp. 869 (W.D.N.Y. 1996) .................................................................. 10

*Heston v. Taser Int'l, Inc.*,
  431 F. App'x 586 (9th Cir. 2011) ...................................................................... 8

*In re Baycol Prods. Litig.*,
  532 F. Supp. 2d 1029 (D. Minn. 2007), *aff'd*, 596 F.3d 884 (8th Cir. 2010) ............................................................................................................... 13

*In re C.R. Bard, Inc.*,
  948 F. Supp. 2d 589 (S.D. W. Va. 2013) ......................................................... 13

*In re Cessna 208 Series Aircraft Prods. Liab. Litig.*,
  2009 WL 1357234 (D. Kan. May 12, 2009) ................................................... 15

*In re Fosamax Prods. Liab. Litig.*,
  645 F. Supp. 2d 164 (S.D.N.Y. 2009) ............................................................. 13

*In re Norplant Contraceptive Prods. Liab. Litig.*,
  1997 WL 80526 (E.D. Tex. Feb. 19, 1997) ................................................ 9, 10

*In re Norplant Contraceptive Prods. Liab. Litig.*,
  1997 WL 80528 (E.D. Tex. Feb. 19, 1997) ............................................ 8, 9, 11

*In re Rezulin Prods. Liab. Litig.*,
  309 F. Supp. 2d 531 (S.D.N.Y. 2004) ................................................. 13, 14, 15

*In re Seroquel Prods. Liab. Litig.*,
  2009 WL 223140 (M.D. Fla. Jan. 30, 2009) ............................................. 11-12

*In re Trasylol Prods. Liab. Litig.*,
  2010 WL 1489793 (S.D. Fla. Feb. 24, 2010) ............................................ 13, 14

*In re Trasylol Prods. Liab. Litig.*,
  709 F. Supp. 2d 1323 (S.D. Fla. 2010) ............................................................ 14

*La Plante v. Am. Honda Motor Co.*,
    27 F.3d 731 (1st Cir.1994)................................................................................................10

*Skibniewski v. Am. Home Prods. Corp.*,
    2004 WL 5628157 (W.D. Mo. Apr. 1, 2004)......................................................................8

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
    538 U.S. 408 (2003)............................................................................................................8

*Tyree v. Boston Scientific Corp.*,
    2014 WL 5320566 (S.D. W. Va. Oct. 29, 2014)...............................................................13

*Wolfe v. McNeil-PPC, Inc.*,
    2011 WL 1673805 (E.D. Pa. May 4, 2011).......................................................................14

*Zazu Designs v. L'Oreal, S.A.*,
    979 F.2d 499 (7th Cir. 1992) ..............................................................................................9

**Other Authorities**

Fed. R. Evid. 401 ................................................................................................ 1, 6, 7, 12, 15

Fed. R. Evid. 402 ................................................................................................................... 6

Fed. R. Evid. 403 ............................................................................................................*passim*

Fed. R. Evid. 404 ...................................................................................................... 1, 6, 12, 15

Fed. R. Evid. 702 ...................................................................................................... 1, 6, 12, 14

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## PRELIMINARY STATEMENT

Lilly anticipates that Plaintiff will attempt to introduce irrelevant and inflammatory evidence and argument purporting to show Lilly's alleged "bad company" conduct and motives. Such evidence and argument would not bear on the limited, straightforward issues in dispute: whether Lilly's label for Cymbalta adequately warned Plaintiff's prescribing physician about the risk of discontinuation-related adverse events, and whether any alleged failure to warn caused Plaintiff's claimed injuries. Indeed, the only conceivable purpose served by introducing evidence and argument concerning Lilly's alleged "bad company" conduct and motives would be to smear Lilly and inflame the jury. Plaintiff should not be permitted to paint Lilly as a "bad company" to distract from the central merits issues that will be adjudicated at trial.

Lilly moves *in limine* to exclude such irrelevant and prejudicial evidence and argument under Federal Rules of Evidence 401, 403, 404, and 702. Specifically, this Court should exclude the following categories of evidence and argument:

(1) evidence and argument regarding financial performance—Lilly's financial motives relating to Cymbalta, Lilly's revenues or profits from sales of Cymbalta, and other financial matters relating to Lilly or Cymbalta;

(2) evidence and argument regarding Zyprexa, a medication manufactured by Lilly, or Lilly's settlement with the federal government concerning Zyprexa;

(3) evidence and argument that Lilly allegedly pursued a deliberate campaign to mislead physicians about Cymbalta's discontinuation risks;

(4) other evidence and argument that Lilly engaged in or intended to engage in unethical, immoral, or otherwise "bad company" conduct.

## FACTUAL BACKGROUND

Lilly anticipates that Plaintiff will seek to introduce evidence and argument that does not weigh on the relevant issues but is intended only to unfairly portray Lilly as a "bad company." The following broad categories describe the assorted types of

irrelevant and prejudicial evidence and argument that Plaintiff may attempt to offer.

A.     **Evidence and Argument on Lilly's Financial Performance**

Plaintiff may attempt to introduce irrelevant and prejudicial evidence and argument concerning Lilly's financial motives relating to Cymbalta, Lilly's revenues or profits from sales of Cymbalta, and other financial matters relating to Lilly or Cymbalta. In its complaint, for example, Plaintiff alleged the following:

> 10.   Lilly is one of the largest pharmaceutical companies in the world with annual revenues exceeding $20 billion. A substantial portion of Lilly's sales and profits have been derived from its drug Cymbalta, whose 2009 annual sales exceeded $3 billion, making it the second most profitable drug in Lilly's current product line.
>
> 26.   Lilly's misleading direct-to-consumer promotional campaigns, its misleading presentation of Cymbalta's efficacy and its failure to adequately warn regarding Cymbalta's withdrawal and dependency side effects have paid off financially for Lilly. Cymbalta has become a "blockbuster" drug with over $3 billion dollars in annual sales. In the past few years, Cymbalta has been the second most profitable drug in Lilly's product line.
>
> 67. Lilly downplayed the serious and dangerous side effects of Cymbalta in order to foster and heighten sales of the product.

Hexum Compl., Hexum Dkt. 1 (Apr. 17, 2013) ¶¶ 10, 26.

Furthermore, at the deposition of Dr. Sharon L. Hoog, a Lilly physician, Plaintiff's counsel attempted at length to elicit testimony on financial matters. *See* Declaration of Kathleen Paley, Esq. ("Paley Decl."), Ex. A (Deposition of Dr. Sharon L. Hoog, Dec. 10, 2014) at 50:20-25 ("Q. Have you heard Cymbalta referred to as a billion-dollar drug? / A. I don't recall. / Q. Have you heard it referred to as a blockbuster drug? / A. I don't recall."); *id.* at 62:23-25 ("Q. And so the total for U.S. and abroad in 2013 for Cymbalta is in excess of $5 billion in revenue; right?"); *id.* at 63:2-5 ("Q. And you're aware, I assume, even if you didn't know the numbers before

today, that Cymbalta, by 2013, was Eli Lilly's highest-earning pharmaceutical drug; correct?"); *id.* at 63:21-23 ("Cymbalta stands at the top of the list of every single pharmaceutical product that Lilly made until it went off patent; didn't it?"); *id.* at 64:5-10 ("Q. Were you aware before today, and I'll represent to you that Lilly's Cymbalta is one of only a handful of pharmaceutical drugs in the history of the United States to ever exceed $5 billion in revenue in a year.  Did you know that?").

Finally, Plaintiff's exhibit list contains items that bear on Lilly's financial matters, including but not limited to the following:

- <u>Paley Decl., Ex. B (Pl.'s Ex. 41): "About Lilly" Print-Out from Lilly.com</u>:  This exhibit states that Lilly has over $24.3 billion in sales.
- <u>Paley Decl., Ex. C (Pl.'s Ex. 42): Lilly's 2013 Annual Report</u>: This exhibit shows that Lilly's revenues for Cymbalta in 2013 were $3.9 billion within the United States and $1.1 billion outside the United States.  It also shows that, in 2013, Cymbalta generated more revenue than other Lilly products.
- <u>Paley Decl., Ex. D (Pl.'s Ex. 43): "Cymbalta Introduction" (CYM 01726046-52)</u>: This exhibit states that Cymbalta grew on the market each year from 2004 until 2013, its last year of patent protection.
- <u>Paley Decl., Ex. E (Pl.'s Ex. 88): Lilly Presentation re: Cymbalta (Sept. 16, 2008) (CYM 1725885-6104)</u>: Plaintiff might use slides from this internal Lilly presentation to unfairly suggest that Lilly was overly focused on profits.   Slide 4 states, "One Brand: Two Blockbuster Opportunities," for "Mood" and for "Pain."  Slide 104 states that a 2009 Cymbalta business objective was to "[d]ouble the Cymbalta business from $2 billion to $4 billion over patent lifetime of drug."
- <u>Paley Decl., Ex. F (Pl. Ex. 382): "Eli Lilly: Top 13 Advertising Budgets" Print-Out from FiercePharma.com (Sept. 23, 2008)</u>: This exhibit states that Lilly "pumped up its media push on its antidepressant Cymbalta by a decent 17.5 percent to $184 million," and "Cymbalta sales growth reached a whopping 60 percent, giving Lilly a $2.1 billion infusion to the top line, $1.8 billion of that in the U.S. alone."

- 3 -
MOTION IN LIMINE TO EXCLUDE EVIDENCE AND ARGUMENT ON LILLY'S ALLEGED "BAD COMPANY" CONDUCT

### B. Evidence and Argument Concerning Zyprexa and Lilly's Settlement Regarding Zyprexa

Plaintiff may attempt to introduce irrelevant and prejudicial evidence and argument concerning Zyprexa—in particular, Lilly's settlement with the federal government regarding Zyprexa. In its complaint, Plaintiff alleged:

> 26. . . . Coincidently, the only drug ahead of Cymbalta is Zyprexa, an antipsychotic drug that Lilly promoted illegally. Indeed, in 2009, Lilly agreed to plead guilty and pay $1.415 billion to the federal government for illegally promoting Zyprexa. This resolution included a criminal fine of $515 million, which, at the time, was the largest settlement ever in a health care case, and the largest criminal fine for an individual corporation ever imposed in a United States criminal prosecution of any kind.

Hexum Compl. ¶ 26.

### C. Evidence and Argument That Lilly Allegedly Pursued A Deliberate Campaign to Mislead Physicians About Cymbalta's Discontinuation Risks

Lilly anticipates that Plaintiff may rely on its purported causation expert, Dr. Joseph Glenmullen, to introduce evidence and argument that Lilly deliberately designed the Cymbalta label to mislead physicians about Cymbalta's discontinuation risks. Plaintiff's response to Lilly's motion for summary judgment demonstrates that Dr. Glenmullen's testimony is the chief purported source for its allegations about Lilly's deceitful marketing and labeling tactics:

- "Lilly knowingly and deliberately marketed Cymbalta as being comparable to other antidepressants when it was actually one of the worst." *See* Hexum Opp. to Lilly's Mot. for Sum. J., Hexum Dkt. 149 (Feb. 23, 2015), at 6 (citing Dr. Glenmullen's expert report).
- "And, when the U.S. Cymbalta label is compared to the label used in Europe, there is strong evidence that Lilly was deliberately concealing material information from U.S. consumers." *See id.* at 19 (citing Dr. Glenmullen's expert report and

iterations of European label).

### D. Evidence and Argument on Alleged Unethical, Immoral, or Otherwise "Bad Company" Conduct or Motives

Plaintiff may attempt to introduce other evidence and argument purporting to show that Lilly engaged in or intended to engage in unethical, immoral, or otherwise "bad company" conduct. To illustrate, Plaintiff's complaint is replete with inflammatory rhetoric:

> 21. . . . Lilly financially benefits by having a legion of physically dependent, long-term users of Cymbalta.
>
> 75. In addition, Lilly's conduct in the packaging, warning, marketing, advertising, promoting, distribution, and sale of the drug was committed with knowing, conscious, willful, wanton, and deliberate disregard for the value of human life, and the rights and safety of consumers, including Plaintiff.

Hexum Compl. ¶¶ 21, 75.

Additionally, Plaintiff's exhibit list contains items that Plaintiff might use to introduce irrelevant and prejudicial evidence and argument purporting to show Lilly's unethical, immoral, or otherwise "bad company" conduct or motives. For example:

- <u>Paley Decl., Ex. G (Pl.'s Ex. 252): Lilly Email Exchange re: Taper Period Study of Effexor and Cymbalta (Oct. 17, 2002) (CYM 01802885-88)</u>: This internal Lilly email exchange from 2002 discusses a study comparing Cymbalta with Effexor. Following active drug treatment, study participants would either enter a taper period or a compassionate use program. The email exchange includes the following statement: "Also, of note, not all countries allow compassionate use programs, perhaps not all physicians want to participate in the program as we are not planning on providing funding for visits, just study (the CRF is very small). Somehow, we need to write the protocol so that the compassionate use program may not be an option for all patient (yuck!). Study discontinuations, no rescue packages." *See* CYM 01802887. Such a statement has no bearing on any relevant

issue in the case. The only purpose served by its introduction would be to depict Lilly in an unflattering light and to inflame the jury.

- <u>Paley Decl., Ex. H (Pl.'s Ex. 44): Periodic Safety Update Report (Sept. 25, 2012) (CYM 00512955-3146)</u>: Plaintiff might use this document to show that Lilly withdrew Cymbalta from the Algeria market due to "insufficient future profitability." Plaintiff might further use this document to unfairly suggest that Lilly prioritized profits over people. Lilly's decision to withdraw Cymbalta from Algeria has no bearing on any relevant issue in the case. The only purpose served by introducing such evidence would be to prejudice the jury against Lilly.

## ARGUMENT

**A.  Applicable Legal Standards**

Relevant evidence is that which has any tendency to make a fact that is of consequence in determining the action more or less probable than it would be without the evidence. Fed. R. Evid. 401. Evidence that is not relevant is not admissible. Fed. R. Evid. 402. Yet, even relevant evidence is inadmissible "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues," or "misleading the jury." Fed. R. Evid. 403.

Under Federal Rule of Evidence 404, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Under Federal Rule of Evidence 702, expert testimony must draw from the expert's "scientific, technical, or other specialized knowledge," must be "based on sufficient facts or data," must be the "product of reliable principles and methods" that have been "reliably applied" to the "facts of the case," and must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.

B. **Evidence and Argument on Lilly's Financial Performance Is Inadmissible Because It Is Irrelevant and Prejudicial.**

1. **Evidence and Argument on Financial Performance Is Irrelevant**

Plaintiff should be barred from introducing evidence and argument concerning Lilly's supposed financial motives in the labeling and marketing of Cymbalta, Lilly's revenues or profits from sales of Cymbalta, and other financial matters relating to Lilly or Cymbalta. Under Rule 401, such evidence is not relevant to any issue in this case and is not admissible. Evidence concerning Lilly's finances or Cymbalta's sales would not make it more or less likely that the Cymbalta label failed to warn Plaintiff's prescribing physician about the risk of discontinuation symptoms, or that this alleged failure to warn caused Plaintiff's claimed injuries. That is, the question of whether the *language* of the Cymbalta label was adequate for Plaintiff's physician to make the prescribing decision cannot turn on such financial matters. In fact, much of the financial data that Plaintiff plans to introduce at trial involves sales from *after* 2012, when the prescribing physician had started Plaintiff on Cymbalta. Plaintiff's Exhibit 43, for example, is Lilly's 2013 Annual Report. *See* Background at 2-3. As Plaintiff's deposition of Dr. Hoog made clear, Plaintiff plans to use this report to show that, in 2013, Cymbalta was Lilly's best seller and generated $5 billion dollars in revenue for the company. *See id.* But this 2013 figure, however large, can have no bearing on the language of the Cymbalta label in 2012.

Although Plaintiff may argue that financial data related to Lilly and Cymbalta goes to the issue of punitive damages, in the Ninth Circuit, punitive damages cannot be found where a manufacturer warns of the potential risk that resulted in a plaintiff's injury, even when that warning is inadequate. *See, e.g., Heston v. Taser Int'l, Inc.*, 431 F. App'x 586, 589 (9th Cir. 2011) (upholding decision to vacate punitive damages award where "TASER made efforts, albeit insufficiently, to warn its customers about the risks posed by prolonged TASER deployment"). While an inadequate warning "may amount to negligence, it does not rise to the level [of] 'willful or wanton' conduct" required to support punitive damages. *Id.* As explained in Lilly's motion

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

for summary judgment, Lilly has warned about the risk of Cymbalta discontinuation symptoms since its initial launch. *See* Lilly's Mot. for Summ. J., Hexum Dkt. 129 (Feb. 5, 2015), at 17-18. Thus, Plaintiff's punitive damages claim may not be used as a justification for offering this evidence.

Furthermore, the Supreme Court has held that conduct for which punitive damages are awarded must have "a nexus to the specific harm suffered by the plaintiff." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003). Based on this standard, courts have precluded plaintiffs from relying on evidence of sales to persons other than the plaintiff to support punitive damage claims. *See, e.g.*, *Skibniewski v. Am. Home Prods. Corp.*, 2004 WL 5628157, at *12 (W.D. Mo. Apr. 1, 2004) (excluding statements concerning "Wyeth's sales volume, gross income, or profit from the sale of the products at issue to persons other than plaintiff").

*In re Norplant* is particularly instructive. There, although the plaintiffs sought to introduce evidence about the defendants' sales data, which they claimed was relevant to "[d]efendants' motive to overpromote Norplant's benefits and minimize its side effects and to the issue of punitive damages," the court granted defendants' motion to exclude the evidence because such sales data was "irrelevant to the central issue of whether the [d]efendants did or did not adequately warn physicians about Norplant's side effects." *In re Norplant Contraceptive Prods. Liab. Litig.*, 1997 WL 80528, at *1 (E.D. Tex. Feb. 19, 1997). Here, too, financial and sales data about Cymbalta does "not tend to prove or disprove any fact of consequence in this action." *See id.* The plaintiffs in *In re Norplant* also sought to introduce evidence about the profit margin for Norplant, which they claimed was relevant to "Wyeth's motive to rush Norplant to market without evaluating Norplant medically or scientifically," "Wyeth's motive to suppress known hazards of Norplant when it failed to warn physicians and women of Norplant's serious side effects," and "the issue of punitive damages." *In re Norplant Contraceptive Prods. Liab. Litig.*, 1997 WL 80526, at *1 (E.D. Tex. Feb. 19, 1997). Again, the court ruled that profit margin evidence could

not affect "the jury's determination whether (1) [the plaintiffs'] treating physicians knew when they prescribed Norplant about the side effects of which these [plaintiffs] complain and, if not, (2) whether Wyeth failed to warn physicians adequately about these side effects." *See id.* Here, too, financial data about Cymbalta's profit margin is not "relevant to any failure to warn issue." *See id.*

### 2. Evidence and Argument on Financial Performance Is Prejudicial.

Even if evidence and argument on financial matters were tangentially relevant—which they are not—the risk of undue prejudice would substantially outweigh its probative value. Such evidence and argument is thus inadmissible under Rule 403. Indeed, Plaintiff's goal in introducing financial evidence and argument is undoubtedly to portray Lilly as a company that has pursued profits at the cost of patient safety, an unsupported, inflammatory claim. Introducing such financial evidence and argument is a blatant attempt to bias the jury against Lilly by playing on the tired "bad company" motif of profits-over-people. *Cf. Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 508 (7th Cir. 1992) ("Seeing the corporation as wealthy is an illusion, which like other mirages frequently leads people astray.").

Plaintiff's complaint further suggests that it plans to employ financial evidence and argument to portray Lilly as a faceless corporate actor that deliberately misled physicians and patients about Cymbalta's discontinuation risks so that it could propel Cymbalta to "blockbuster" status and "maximize sales and profits at the expense of public health and safety." *See* Hexum Compl. ¶¶ 26, 86. In other words, Plaintiff plans to leverage Lilly's financial success with Cymbalta for rhetorical purposes, in an attempt to show that Lilly deliberately ignored safety concerns to enrich itself. This story is pure conjecture, and the risk that such financial evidence and argument will cause undue prejudice easily overwhelms its probative value.

Excluding evidence and argument of Lilly's profits and Cymbalta's sales on Rule 403 grounds would harmonize with the applicable case law. Due to the substantial risk of undue prejudice, courts routinely preclude plaintiffs in products

liability actions from eliciting testimony about defendants' finances. *See, e.g.*, *Ake v. Gen. Motors Corp.*, 942 F. Supp. 869, 876 (W.D.N.Y. 1996) (precluding plaintiff in products liability action from offering evidence of GM's profits); *In re Norplant*, 1997 WL 80526, at *1 ("With respect to punitive damages, any marginal probative value of profit margin to show gross negligence would be outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.").

In *La Plante v. Am. Honda Motor Co.*, 27 F.3d 731 (1st Cir.1994), for example, the First Circuit held that the trial court had erred in admitting evidence of Honda's profits from all-terrain vehicle sales, which the plaintiff offered to show that Honda's failure to warn was not the result of its ignorance of the product's dangers, but of "greed." *See id.* at 739-40. The First Circuit reasoned that the "evidence was, at best, marginally relevant and of scant probative value," and that the risk of prejudice was "almost inescapable." *Id.* at 740. Likewise here, Plaintiff seeks to use financial data to show that greed led Lilly to mislead physicians about Cymbalta's discontinuation risks. This tactic is impermissibly inflammatory.

**3.   Evidence and Argument on Financial Performance Will Waste Time.**

Plaintiff's "bad company" story of profits-over-people will be both time-consuming and will tend to draw the jury's attention away from those facts relevant to this case. An extensive mini-trial over Lilly's profitability will necessarily consume time and cause undue delay. Evidence and argument about Lilly's profits and Cymbalta's sales is inadmissible on this separate Rule 403 ground. *See In re Norplant*, 1997 WL 80528, at *1 (ruling that the admission of "evidence of sales trends" would "lead to a full mini-trial on all of the different possible causes for and inferences that may be drawn from declining Norplant sales in recent years").

### C. Evidence and Argument Concerning Zyprexa and Lilly's Settlement Regarding Zyprexa Is Irrelevant and Prejudicial, and Such Evidence Constitutes Improper Character Evidence.

Plaintiff may also attempt to introduce irrelevant and prejudicial evidence and argument concerning Zyprexa—in particular, Lilly's settlement with the federal government regarding Zyprexa. *See* Background at 4. Nonetheless, Zyprexa and Lilly's settlement have no relevance to the issues in this case. Evidence on these matters would not make it more or less likely that the Cymbalta label failed to warn Plaintiff's prescribing physician about the risk of discontinuation symptoms, or that this alleged failure to warn caused Plaintiff's claimed injuries.

Furthermore, the risk that these matters will cause undue prejudice or distract the jury is exceedingly high. As Plaintiff alleges in its complaint, "Lilly agreed to plead guilty and pay $1.415 billion to the federal government for illegally promoting Zyprexa," a settlement which included "the largest criminal fine for an individual corporation ever imposed in a United States criminal prosecution of any kind." Hexum Compl. ¶ 26. These allegations have no probative value but are salacious enough to unfairly taint the jury's impression of Lilly and draw the jury's attention away from the relevant issues.

Finally, to the extent that Plaintiff seeks to introduce evidence of Lilly's improper promotion of Zyprexa as corporate character evidence to show that Lilly's promotion of Cymbalta was conduct in conformity therewith, the evidence plainly would be inadmissible under Rule 404(b)(1).

*In re Seroquel* illustrates the application of these principles on virtually identical facts. There, the plaintiffs brought a products liability action against AstraZeneca over the medication Seroquel. *In re Seroquel Prods. Liab. Litig.*, 2009 WL 223140, at *1 (M.D. Fla. Jan. 30, 2009). AstraZeneca moved *in limine* to exclude evidence of the company's 2003 settlement with the federal government relating to the pricing of Zoladex, an anti-cancer medication, or about the Corporate Integrity Agreement that was part of that settlement. *Id.* at *7. The court considered the

MOTION IN LIMINE TO EXCLUDE EVIDENCE AND ARGUMENT ON LILLY'S ALLEGED "BAD COMPANY" CONDUCT

parties' arguments—which mirror the arguments here—and granted AstraZeneca's motion, holding that "a party's agreement" as to a "completely different medication" was "irrelevant to [p]laintiffs' claims." *Id.* The court added that "its prejudice outweighs any potential probative value, wastes time, and will confuse the jury." *Id.*

This Court should follow the blueprint of *In re Seroquel* and hold that an agreement as to Zyprexa, a "completely different medication" from Cymbalta, is "irrelevant to [Plaintiff's] claims" under Rule 401. *See id.* Additionally, under Rule 403, the "prejudice" of evidence and argument concerning Zyprexa and the Zyprexa settlement "outweighs any potential probative value, wastes time, and will confuse the jury." *See id.*

**D.  Evidence and Argument That Lilly Allegedly Pursued A Deliberate Campaign to Mislead Physicians About Cymbalta's Discontinuation Risks Is Inadmissible.**

Lilly anticipates that Plaintiff will attempt to use Dr. Joseph Glenmullen, its purported causation expert, to smuggle in evidence and argument that Lilly deliberately misled physicians about Cymbalta's discontinuation risks. Yet, as Lilly argues in its separate motion to exclude Dr. Glenmullen's expert testimony, Rule 702 prohibits Plaintiff from using Dr. Glenmullen or any other expert in this way. *See* Lilly's Mot. to Exclude Dr. Joseph Glenmullen's Expert Testimony, Hexum Dkt. 130 (Mar. 4, 2015), at 15-19, 21-23.

It is well settled that a pharmaceutical company's "knowledge, state of mind, alleged bad acts, failures to act, or other matters related to corporate conduct and ethics are not appropriate subjects of expert testimony." *In re C.R. Bard, Inc.*, 948 F. Supp. 2d 589, 610-11 (S.D. W. Va. 2013). Such opinions are inherently unreliable and irrelevant; they rest on speculation rather than any scientific methodology and cannot assist the jury in understanding the evidence. *See In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 542-46 (S.D.N.Y. 2004) (holding that expert testimony on a pharmaceutical company's "intent, motives," or "state[] of mind," or "whether [its] conduct was ethical," is inadmissible under Rule 702); *In re Fosamax Prods. Liab.*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Litig.*, 645 F. Supp. 2d 164, 191-92 (S.D.N.Y. 2009) (excluding expert's "'bad company' testimony" about Merck's corporate conduct, as testimony was "based upon a single email exchange between Merck employees" and had "marginal relevance to the issues in controversy"); *Tyree v. Boston Scientific Corp.*, 2014 WL 5320566, at *4 (S.D. W. Va. Oct. 29, 2014) (holding that "a party's knowledge, state of mind, or other matters related to corporate conduct and ethics are not appropriate subjects of expert testimony because opinions on these matters will not assist the jury"); *In re Trasylol Prods. Liab. Litig.*, 2010 WL 1489793, at *9 (S.D. Fla. Feb. 24, 2010) (excluding expert testimony concerning Bayer "because it rests on speculation about Bayer's subjective motivations, which is not a proper subject for expert testimony"); *In re Baycol Prods. Litig.*, 532 F. Supp. 2d 1029, 1053 (D. Minn. 2007) (excluding expert's "[p]ersonal views on corporate ethics and morality"), *aff'd*, 596 F.3d 884 (8th Cir. 2010).

In *In re Rezulin*, for example, the court excluded expert testimony that Warner-Lambert acted unethically, "especially with respect to its presentation of, or reaction to, Rezulin clinical data and the conduct of Rezulin clinical trials," that Warner-Lambert "chose" to provide "incomplete information" about the Rezulin label, that Warner-Lambert "decided to focus on the incomplete and inaccurate approval data and to minimize the troubling post-approval data," that "it [was] highly improbable that [Warner-Lambert] was unaware" of the risks of Rezulin, and that Warner-Lambert was "motivated by profit" to engage in obfuscation. 309 F. Supp. 2d at 542-46, 545 n.38, 546 n.40.

Similarly, in *In re Trasylol*, the court excluded an expert's "personal 'bad company' opinions" that "contain[ed] improper references to Bayer's . . . knowledge and intent." *In re Trasylol Prods. Liab. Litig.*, 709 F. Supp. 2d 1323, 1337-38 (S.D. Fla. 2010). The court precluded the expert from testifying that Bayer "provided training and sales aids designed to help minimize the risks of Trasylol for physicians," and that "Bayer was aware that despite its promotion of the full dose regimen, it had

not tested, labeled or adequately warned physicians of the increased dose-dependent risks of the full dose when compared to the half dose." *Id.* at 1346 & n.30.

Based on this well-established case law, Plaintiff may not employ Dr. Glenmullen as a vehicle to introduce evidence and argument that Lilly "mounted a campaign" to accentuate Prozac's long half-life, that Lilly "did an about face" in marketing Cymbalta, or that Lilly was "aware of" but "chose to obscure" and "minimize" the risk of Cymbalta discontinuation. *See* Lilly's Mot. to Exclude Dr. Joseph Glenmullen's Expert Testimony, Hexum Dkt. 130 (Mar. 4, 2015), at 16, 18-19 (quoting Dr. Glenmullen's report). Under Rule 702, such matters are not proper subjects of expert testimony.

In addition, expert testimony on Lilly's alleged deliberate campaign to mislead prescribing healthcare professionals about Cymbalta's discontinuation risks would be improper under Rule 403. *See Wolfe v. McNeil-PPC, Inc.*, 2011 WL 1673805, at *9 (E.D. Pa. May 4, 2011) ("[E]ven if Dr. Goldberg's proposed testimony could satisfy *Daubert*, it would still be excluded under Rule 403. Whatever benefit could be derived from his opinions about McNeil's social responsibility and ethical obligations is vastly outweighed by the tendency of such testimony to encourage the jury to impose liability on an improper basis."); *In re Cessna 208 Series Aircraft Prods. Liab. Litig.*, 2009 WL 1357234, at *3 (D. Kan. May 12, 2009) (precluding business ethicist's expert testimony that company "failed to act as a conscientious corporation, maintained a defective corporate culture, violated fundamental principles of ethics and compromised basic moral rights," because these "opinions would not assist the jury," "are not directly relevant to plaintiffs' product liability claims," and "they may tend to mislead or confuse the jury"); *In re Rezulin*, 309 F. Supp. 2d at 545 ("Even assuming that the proposed ethics testimony were reliable and marginally relevant under Rule 702, it would be likely unfairly to prejudice and confuse the trier by introducing the 'experts'' opinions and rhetoric concerning ethics . . . .").

MOTION IN LIMINE TO EXCLUDE EVIDENCE AND ARGUMENT ON LILLY'S ALLEGED "BAD COMPANY" CONDUCT

**E.  Evidence and Argument on Lilly's Other Alleged Unethical, Immoral, or Otherwise "Bad Company" Conduct or Motives Should Be Excluded.**

Plaintiff should be barred from introducing other evidence and argument concerning Lilly's alleged "bad company" conduct or motives.  This evidence could pertain to Lilly's alleged conduct and motives with respect to matters that are unrelated to the Cymbalta discontinuation warning, or even to Cymbalta.  That sort of evidence would be inadmissible under Rule 401.  *See, e.g.*, Background at 5.

Even if the evidence is relevant, it could be so inflammatory that the risk of undue prejudice or jury confusion would substantially outweigh its probative value.  Plaintiff may not use marginally relevant evidence to depict Lilly in an unflattering light and thereby turn the jury against it.  That sort of evidence would be inadmissible under Rule 403.  *See, e.g., id.*  Nor may Plaintiff use evidence of alleged misdeeds by Lilly to prove conduct in conformity therewith.  Rule 404(b)(1) bars this practice.

## CONCLUSION

For the foregoing reasons, Lilly respectfully requests that the Court exclude evidence and argument on Lilly's alleged "bad company" conduct.

DATED: March 30, 2015

      REED SMITH LLP

By  */s/ David E. Stanley*
    David E. Stanley
    REED SMITH LLP

Michael X Imbroscio *(pro hac vice)*
Phyllis A. Jones *(pro hac vice)*
Kathleen E. Paley *(pro hac vice)*
COVINGTON & BURLING LLP

Attorneys for Defendant
ELI LILLY AND COMPANY