David E. Stanley (SBN 144025)
Katherine W. Insogna (SBN 266326)
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071-1514
Telephone: (213) 457-8000
Facsimile: (213) 457-8080
dstanley@reedsmith.com
kinsogna@reedsmith.com

Michael X. Imbroscio (*pro hac vice*)
Phyllis A. Jones (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone: (202) 662-5868
Facsimile: (202) 778-5868
mimbroscio@cov.com
pajones@cov.com

Attorneys for Defendant
Eli Lilly and Company

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIN HEXUM AND NICK HEXUM,<br><br>               Plaintiffs,<br><br>   vs.<br><br>ELI LILLY AND COMPANY, an Indiana corporation,<br><br>               Defendant. | Case No. CV 13-02701 −SVW−MAN<br><br>**LILLY'S NOTICE OF MOTION AND MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO THE QUARTERWATCH PUBLICATION**<br><br>Date:     April 27, 2015<br>Time:     3:00 PM<br>Location:  Courtroom 6<br>Judge:   Hon. Stephen V. Wilson |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1

2

## NOTICE OF MOTION

3

4   TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

5   PLEASE TAKE NOTICE that, on April 27, 2015, at 3:00 p.m., or as soon

6   thereafter as the matter may be heard in Courtroom 6 of the United States District

7   Court, Central District of California, Western District, located at 312 N. Spring Street,

8   Los Angeles, California 90012, Defendant Eli Lilly and Company will move the

9   Court to exclude evidence relating to the *QuarterWatch* publication, pursuant to

10  Federal Rules of Evidence 901, 802, 803, and 703.

11  The motion will be based on this notice of motion, the memorandum of points

12  and authorities set forth below, and counsel's declaration and exhibits thereto.  This

13  motion is made following a conference of counsel pursuant to L.R. 7-3, which took

14  place on March 16, 2015.

15

16

17  DATED: March 30, 2015

18

19                                        By   */s/ David E. Stanley*
                                               David E. Stanley
20                                             REED SMITH LLP

21                                             Michael X Imbroscio *(pro hac vice)*
                                               Phyllis A. Jones *(pro hac vice)*
22                                             Kathleen E. Paley *(pro hac vice)*
                                               COVINGTON & BURLING LLP

23                                             Attorneys for Defendant
                                               ELI LILLY AND COMPANY

24

25

26

27

28

MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO QUARTERWATCH

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ........................................................................................................2

ARGUMENT ............................................................................................................4

A.    The QuarterWatch Report Is Not Self-Authenticating.............................4

B.    The QuarterWatch Report Is Inadmissible Hearsay..............................5

C.    The QuarterWatch Report Does Not Fall Within the Hearsay Exception
      for Learned Treatises..............................................................................7

D.    Rule 703 Does Not Enable Plaintiff's Experts to Transmit Statements
      from the QuarterWatch Report to the Jury.............................................11

E.    Expert Testimony That Parrots the QuarterWatch Report Is Inadmissible. .13

CONCLUSION........................................................................................................14

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO QUARTERWATCH

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Adobe Sys. Inc. v. Christenson*,
  2011 WL 540278 (D. Nev. Feb. 7, 2011) .................................................. 4

*Bellew v. Ethicon, Inc.*,
  2014 WL 6680356 (S.D. W. Va. Nov. 25, 2014) ...................................... 6

*Chao v. Westside Drywall, Inc.*,
  709 F. Supp. 2d 1037 (D. Or. 2010) ........................................................ 6

*Cholakyan v. Mercedes-Benz, USA, LLC*,
  281 F.R.D. 534 (C.D. Cal. 2012) ............................................................ 12

*Combs v. Washington State*,
  2014 WL 4293960 (W.D. Wash. Aug. 29, 2014) ................................ 5, 7

*Diodem, LLC v. Lumenis Inc.*,
  2005 WL 6220667 (C.D. Cal. Jan. 10, 2005) ...................................... 5, 7

*Glastetter v. Novartis Pharms. Corp.*,
  107 F. Supp. 2d 1015 (E.D. Mo. 2000), *aff'd*, 252 F.3d 986 (8th Cir.
  2001) ................................................................................................... 10, 11

*Glowczenski v. Taser Int'l, Inc.*,
  928 F. Supp. 2d 564 (E.D.N.Y. 2013) ...................................................... 9

*In re Homestore.com, Inc.*,
  2011 WL 291176 (C.D. Cal. Jan. 25, 2011) ............................................ 4

*In re Homestore.com, Inc. Sec. Litig.*,
  347 F. Supp. 2d 769 (C.D. Cal. 2004) ................................................. 4, 5

*In re Rezulin Prods. Liab. Litig.*,
  309 F. Supp. 2d 531 (S.D.N.Y. 2004) .................................................... 13

*In re Welding Fume Prods. Liab. Litig.*,
  534 F. Supp. 2d 761 (N.D. Ohio 2008) .................................................... 8

*Logan v. City of Pullman*,
  392 F. Supp. 2d 1246 (E.D. Wash. 2005) ................................................ 5

MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO QUARTERWATCH

*Marvel Characters, Inc. v. Kirby*,
    726 F.3d 119 (2d Cir. 2013) ............................................................... 12, 13

*Meschino v. N. Am. Drager, Inc.*,
    841 F.2d 429 (1st Cir. 1988).................................................................. 8, 9

*Mesfun v. Hagos*,
    2005 WL 5956612 (C.D. Cal. Feb. 16, 2005) .................................... 12, 13

*O'Brien v. Angley*,
    407 N.E.2d 490 (Ohio 1980) .................................................................. 8, 9

*Soldo v. Sandoz Pharms. Corp.*,
    244 F. Supp. 2d 434 (W.D. Pa. 2003) ..................................................... 10

*State Farm Fire & Cas. Co. v. Electrolux Home Prods., Inc.*,
    980 F. Supp. 2d 1031 (N.D. Ind. 2013) ................................................... 13

*Stewart v. Wachowski*,
    574 F. Supp. 2d 1074 (C.D. Cal. 2005) ..................................................... 5

*Swallow v. Emergency Med. of Idaho, P.A.*,
    67 P.3d 68 (Idaho 2003) .................................................................. 10, 11

*Turner v. Burlington N. Santa Fe R. Co.*,
    338 F.3d 1058 (9th Cir. 2003) ................................................................ 13

*United States v. Grey Bear*,
    883 F.2d 1382 (8th Cir. 1989) ................................................................ 12

*United States v. Jones*,
    712 F.2d 115 (5th Cir. 1983) ................................................................... 9

*United States v. Martinez*,
    588 F.3d 301 (6th Cir. 2009) ................................................................... 9

*United States v. Mejia*,
    545 F.3d 179 (2d Cir. 2008) ................................................................... 14

*United States v. Satterfield*,
    572 F.2d 687 (9th Cir. 1978) ................................................................... 5

*United States v. Tomasian*,
    784 F.2d 782 (7th Cir. 1986) .......................................................... 12, 13

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

- v -

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*United States v. Tran Trong Cuong,*
    18 F.3d 1132 (4th Cir. 1994) ................................................................... 12

*United States. v. Turner,*
    104 F.3d 217 (8th Cir. 1997) ..................................................................... 9

*Wady v. Provident Life & Accident Ins. Co. of Am.,*
    216 F. Supp. 2d 1060 (C.D. Cal. 2002) .................................................... 4

*Wilson v. Upjohn Corp.,*
    968 F.3d 1217 (6th Cir. 1992) ............................................................. 6, 7

**<u>Rules</u>**

Fed. R. Evid. 702 .......................................................... 9, 10, 11, 13

Fed. R. Evid. 703 ........................................................ 1, 2, 11, 12, 13

Fed. R. Evid. 801 ........................................................................... 5

Fed. R. Evid. 802 ................................................................... 1, 2, 5

Fed. R. Evid. 803 ................................................................... 1, 2, 7

Fed. R. Evid. 901 .............................................................. 1, 2, 4, 5

21 C.F.R. § 201.57 ...................................................................... 10

21 C.F.R. § 314.80 ...................................................................... 10

**<u>Additional Authorities</u>**

29 Charles Alan Wright & Victor James Gold, Federal Practice and
    Procedure: Evidence § 6273 (Sept. 2014) ............................................. 12

"FDA Adverse Event Reporting System (FAERS)," U.S. Food & Drug
    Admin.,
    http://www.fda.gov/Drugs/GuidanceComplianceRegulatoryInformatio
    n/Surveillance/AdverseDrugEffects/ ....................................................... 3

"Full Description of QuarterWatch Methodology," Institute for Safe
    Medication Practices,
    http://www.ismp.org/quarterwatch/detailedmethods.aspx ......................... 3

MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO QUARTERWATCH

"ISMP Mission and Vision Statement," Institute for Safe Medication
     Practices, http://www.ismp.org/about/mission.asp ..................................................... 2

"Monitoring FDA MedWatch Reports: Why Reports of Serious Adverse
     Drug Events Continue to Grow," *QuarterWatch*, Institute for Safe
     Medication Practices (Oct. 3, 2012),
     http://www.ismp.org/quarterwatch/pdfs/2012Q1.pdf .....................................*passim*

"QuarterWatch Team and Funding Sources," Institute for Safe
     Medication Practices,
     http://www.ismp.org/quarterwatch/disclosure.aspx ................................................. 3

MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO QUARTERWATCH

## PRELIMINARY STATEMENT

Lilly anticipates that Plaintiff will attempt to introduce at trial the views of the Institute for Safe Medical Practices (ISMP), a self-proclaimed medical advocacy organization, through an ISMP publication entitled *QuarterWatch*.  The authors of *QuarterWatch*, regular paid experts *against* the pharmaceutical industry, claim to analyze adverse event reports to the FDA and purport to interpret and draw inferences from the data, as well as dispense medical guidance and their views as to the labeling of medicines.  Lilly anticipates that Plaintiff will specifically seek to introduce an October 3, 2012 issue of *QuarterWatch* that opines on Cymbalta's discontinuation risks, in addition to certain Lilly email correspondence relating to interactions with the *QuarterWatch* authors.

The *QuarterWatch* report fails to meet threshold admissibility standards.  It is not self-authenticating and is, therefore, inadmissible under Federal Rule of Evidence 901.  In addition, on their face, *QuarterWatch* reports and the opinions therein are inadmissible hearsay that do not qualify for any exception.  *See* Fed. R. Evid. 802. The reports lack the authoritativeness of a learned treatise under Federal Rule of Evidence 803(18), for example, as they are written to promote ISMP's mission and are not subject to peer review or collegial scrutiny.  Permitting Plaintiff to submit the October 2012 issue of *QuarterWatch* as substantive evidence—that is, for the truth of the matter stated therein—would enable Plaintiff to smuggle favorable opinion testimony into the trial while insulating the testimony, and its authors, from adversarial challenge.

Lilly also anticipates that Plaintiff will attempt to use its experts—Dr. Joseph Glenmullen and Dr. Lou Morris—to sponsor the opinions contained in the *QuarterWatch* report.  Under Federal Rule of Evidence 703, however, an expert may not simply serve as a mouthpiece for the views of others.  Plaintiff may not rely on Rule 703 to inject *QuarterWatch*'s opinions into the trial through its experts.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO QUARTERWATCH

Accordingly, Lilly moves *in limine* to exclude evidence and testimony in the form of *QuarterWatch* reports, statements from *QuarterWatch* reports, and references to *QuarterWatch* reports, under Rules 901, 802, 803, and 703.

## BACKGROUND

The Institute for Safe Medication Practices touts itself as a pharmaceutical advocacy organization that "[a]dvocate[s] the adoption of safe medication standards by accrediting bodies, manufacturers, policy makers, regulatory agencies, and standards-setting organizations." *See* "ISMP Mission and Vision Statement," Institute for Safe Medication Practices, http://www.ismp.org/about/mission.asp (accessed Mar. 27, 2015). Through *QuarterWatch*, the ISMP claims to "monitor[] all domestic, serious adverse drug events reported to the FDA," and "analyze[s] computer excerpts from the FDA Adverse Event Reporting System (FAERS)" and ultimately purports to interpret that data and provide guidance on potential safety issues. *See* Declaration of Kathleen Paley (Paley Decl.), Ex. A ("Monitoring FDA MedWatch Reports: Why Reports of Serious Adverse Drug Events Continue to Grow," *QuarterWatch*, Institute for Safe Medication Practices (Oct. 3, 2012)) (Pl.'s Ex. 6), *available at* http://www.ismp.org/quarterwatch/pdfs/2012Q1.pdf, at 17 (accessed Mar. 27, 2015) ("Oct. 2012 *QuarterWatch* Report").

Because *QuarterWatch* analyzes spontaneous and voluntary adverse event reporting data, *QuarterWatch* is only as methodologically sound as the data upon which it is based. The FDA acknowledges that "FAERS data do have limitations":

> [T]here is no certainty that the reported event (adverse event or medication error) was actually due to the product. FDA does not require that a causal relationship between a product and event be proven, and reports do not always contain enough detail to properly evaluate an event. . . . FAERS data cannot be used to calculate the incidence of an adverse event or medication error in the U.S. population.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*See* "FDA Adverse Event Reporting System (FAERS)," U.S. Food & Drug Admin., http://www.fda.gov/Drugs/GuidanceComplianceRegulatoryInformation/Surveillance/AdverseDrugEffects/ (accessed Mar. 27, 2015).  Even ISMP recognizes that FAERS data presents "numerous challenges to systematic analysis as presented in QuarterWatch."  *See* "Full Description of QuarterWatch Methodology," Institute for Safe Medication Practices, http://www.ismp.org/quarterwatch/detailedmethods.aspx (accessed Mar. 27, 2015).

Furthermore, by their own admission, the two principal authors of *QuarterWatch*, Thomas J. Moore and Curt D. Furberg, are professional expert witnesses who have served as experts *against* the pharmaceutical industry critical of at least a dozen medicines—including Chantix, Risperdal, Celexa, Lexapro, Elidel, Pradaxa, Yaz, Yasmin, Vytorin, Fosamax, and the COX-2 inhibitors Vioxx, Bextra, and Celebrex.  *See* "QuarterWatch Team and Funding Sources," Institute for Safe Medication Practices, http://www.ismp.org/quarterwatch/disclosure.aspx (accessed Mar. 27, 2015); *see also* Oct. 2012 *QuarterWatch* Report, at 26.

Plaintiff's expert witnesses—Dr. Glenmullen, Plaintiff's purported general causation expert and a career plaintiff-side witness in pharmaceutical litigation, and Dr. Morris, Plaintiff's purported labeling expert—quote extensively from the October 2012 *QuarterWatch* Report in their expert reports.  Neither Dr. Glenmullen nor Dr. Morris analyzes the October 2012 *QuarterWatch* Report.  Rather, they both merely repeat its statements.  *See* Lilly's Mot. to Exclude the Expert Testimony of Joseph Glenmullen, Dkt. #130 (Mar. 4, 2015) ("Mot. to Exclude Glenmullen"), at 21; Lilly's Mot. to Exclude the Expert Testimony of Louis Morris, Dkt. #131 (Mar. 4, 2015) ("Mot. to Exclude Morris"), at 20-22.  Dr. Glenmullen concedes that he did not review the underlying FAERS data or otherwise perform any independent analysis of *QuarterWatch*'s findings.  *See* Mot. to Exclude Glenmullen, Paley Decl., Ex. B (Glenmullen Dep. Tr. at 153:6-17, 154:12-18).  Dr. Morris admits the same.  *See* Mot. to Exclude Morris, Paley Decl., Ex. B (Morris Dep. Tr. at 197:12–198:2).  At his

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO QUARTERWATCH

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  deposition, Dr. Morris even admitted that the QuarterWatch reports formed no part of

2  his (limited) analysis. He testified that he "didn't use [QuarterWatch] as the basis of

3  my opinion or have any opinion about it." *Id.* at 199:9-11. He included it only

4  because "here was another – another group or people, whoever, who had a[n] opinion

5  very similar to mine." *Id.* at 199:11-13; *see also id.* at 242:20-24 (testifying that he

6  cited the *QuarterWatch* reports only because they mirrored his opinion).

7       Plaintiff's exhibit list reveals that it will seek to introduce the October 2012

8  *QuarterWatch* Report in its entirety at trial (as Plaintiffs' Exhibit 6).  Plaintiff will

9  also seek to introduce Lilly email exchanges concerning the October 2012

10 *QuarterWatch* report. *See* Paley Decl., Ex. B ("Email re: Confidential Advance Copy

11 of QuarterWatch," CYM 01779243-46) (Pl.'s Ex. 25); Paley Decl., Ex. C ("Email of

12 Additional Discussion re: QuarterWatch Report," CYM 01766653-54) (Pl.'s Ex. 26).

13                                    **ARGUMENT**

14 **A.     The *QuarterWatch* Report Is Not Self-Authenticating.**

15      As a threshold matter, if Plaintiff seeks to introduce the October 2012

16 *QuarterWatch* Report at trial, Plaintiff must authenticate the document.  *See* Fed. R.

17 Evid. 901.  Even if Plaintiff claims to have printed the report from ISMP's online

18 website, an internet print-out is not self-authenticating.  *See In re Homestore.com*, *Inc.*

19 *Sec. Litig.*, 347 F. Supp. 2d 769, 782-83 (C.D. Cal. 2004) (holding that plaintiff failed

20 to authenticate press and earnings releases from website because, for a website to be

21 authenticated, "some statement or affidavit from someone with knowledge is

22 required," e.g., the website's "web master or someone with personal knowledge");

23 *Wady v. Provident Life & Accident Ins. Co. of Am.*, 216 F. Supp. 2d 1060, 1064-65

24 (C.D. Cal. 2002) (holding that plaintiff could not authenticate internet print-outs

25 because plaintiff had "no personal knowledge of who maintains the website"); *Adobe*

26 *Sys. Inc. v. Christenson*, 2011 WL 540278, at *9 (D. Nev. Feb. 7, 2011) ("Courts do

27 not treat printouts from internet websites as self-authenticating or admit them without

28 foundation or authentication."); *see also In re Homestore.com, Inc.*, 2011 WL 291176,

1   at *7 (C.D. Cal. Jan. 25, 2011) (finding that proponent of an internal audit report had

2   failed to authenticate the document under Rule 901).  Furthermore, Plaintiff's Exhibit

3   6—the October 2012 *QuarterWatch* Report, *see* Paley Decl., Ex. A—does not contain

4   a URL address or a date stamp, which militates against its authenticity.  *See In re*

5   *Homestore.com*, 347 F. Supp. 2d at 782-83.

6   **B.**   **The *QuarterWatch* Report Is Inadmissible Hearsay.**

7          Hearsay is inadmissible, unless it falls into certain well-established exceptions.

8   Fed. R. Evid. 802.  Hearsay statements are "other than one[s] made by the declarant

9   while testifying at the trial or hearing" and are "offered in evidence to prove the truth

10  of the matter asserted."  Fed. R. Evid. 801(c); *Diodem, LLC v. Lumenis Inc.*, 2005 WL

11  6220667, at *6 (C.D. Cal. Jan. 10, 2005).   "Internet articles are independently

12  inadmissible hearsay under Rule 801(c)."  *Combs v. Washington State*, 2014 WL

13  4293960, at *2 (W.D. Wash. Aug. 29, 2014); *accord Stewart v. Wachowski*, 574 F.

14  Supp. 2d 1074, 1105 (C.D. Cal. 2005).  Likewise, "medical textbooks, treatises and

15  professional articles are not freely admissible in evidence to prove the substantive or

16  testimonial facts stated therein, since they are subject to the hearsay rule."  *Combs*,

17  2014 WL 4293960, at *2 (citation omitted).  "As the proponent of the hearsay

18  evidence, Plaintiff[] bear[s] the burden of proving its admissibility."  *See Logan v.*

19  *City of Pullman*, 392 F. Supp. 2d 1246, 1254 (E.D. Wash. 2005).

20         The authors of the October 2012 *QuarterWatch* Report will not be present at

21  trial.  Therefore, the statements contained in the report are hearsay.  Admitting these

22  statements—without affording Lilly the opportunity to depose the statements' authors

23  before trial or cross-examine the statements' authors at trial—would be especially

24  improper because the statements constitute the opinions of ISMP, a pharmaceutical

25  and medical advocacy organization with a clear-cut mission and distinct interests with

26  respect to the pharmaceutical industry.  The authors themselves are career plaintiff-

27  side pharmaceutical expert witnesses.  Preventing unchallenged, unsworn opinions

28  from reaching the jury is the very point of the hearsay rule.  *See, e.g., United States v.*

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

*Satterfield*, 572 F.2d 687, 691 (9th Cir. 1978) ("Hearsay statements are usually excluded because the declarant is unsworn and unavailable for cross-examination and because the jury cannot evaluate his demeanor."). The statements contained in the report also reflect the analysis of its authors. The authors of *QuarterWatch* claim to probe and analyze adverse event reports submitted to the FDA and excerpts from FAERS and ultimately purport to interpret and draw inferences from the data and dispense medical guidance. *See* Background at 2.

Additionally, to the extent that the report summarizes the statements of other persons or entities—such as those who submitted event reports to the FDA, or the FDA itself—the report contains double hearsay. "When a statement is hearsay within hearsay, or double hearsay, each statement must qualify under some exemption or exception to the hearsay rule." *Chao v. Westside Drywall, Inc.*, 709 F. Supp. 2d 1037, 1048 (D. Or. 2010).

The October 2012 Report is analogous to the hearsay evidence that was held inadmissible in *Wilson v. Upjohn Corp.*, 968 F.3d 1217, at *4 (6th Cir. 1992). There, the plaintiffs alleged that Upjohn had failed to adequately warn of the dangers of the tranquilizer Halcion. *Id.* at *1. The plaintiffs relied in part upon hearsay evidence, including articles written by a university professor whose publications described studies finding that next-day memory impairment occurred in 40% of those patients who took Halcion. *Id.* at *3. In affirming the district court's grant of summary judgment for Upjohn, however, the Sixth Circuit observed:

> The numerous articles by Dr. Kales and others submitted by the plaintiffs are not properly before this court. Dr. Kales was never admitted as an expert witness, and none of the articles in question was supported by depositions and affidavits. . . . The various articles cited by the plaintiffs are clearly inadmissible hearsay.

*Id.* at *4.; *see also Bellew v. Ethicon, Inc.*, 2014 WL 6680356, at *6-7 (S.D. W. Va. Nov. 25, 2014) (granting, in products liability action, motion in limine to exclude

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

reference to an opinion piece that was published in the International Urogynecology Journal—Miles Murphy, et al., *Time to Rethink: An Evidence-Based Response from Pelvic Surgeons to the FDA Safety Communication: "UPDATE on Serious Complications Associated with Transvaginal Placement of Surgical Mesh for Pelvic Organ Prolapse"*, Int. Urogynecol. J. (Jan. 23, 2012)); *Combs*, 2014 WL 4293960, at *2 (excluding as inadmissible hearsay "excerpts from a non-medical textbook and three articles from different internet websites as evidence that [d]efendants were deliberately indifferent in their medical treatment of his hernia").

Here, too, the October 2012 Report contains hearsay opinions by authors who were "never admitted as [] expert witness[es]." *See Wilson*, 968 F.3d 1217, at *4. Their statements are "not properly before [t]his Court." *See id.*

## C. The *QuarterWatch* Report Does Not Fall Within the Hearsay Exception for Learned Treatises.

Plaintiff may argue that the October 2012 Report satisfies the exception for learned treatises. Under Rule 803(18), a statement "contained in a treatise, periodical, or pamphlet" is not excluded by the rule against hearsay "if: (A) the statement is called to the attention of an expert witness on cross-examination or relied on by the expert on direct examination; and (B) the publication is established as a reliable authority by the expert's admission or testimony, by another expert's testimony, or by judicial notice." Fed. R. Evid. 803(18); *accord Diodem, LLC v. Lumenis Inc.*, 2005 WL 6220667, at *6 (C.D. Cal. Jan. 10, 2005). Even if it is admitted, "the statement may be read into evidence but not received as an exhibit." Fed. R. Evid. 803(18).

Based on the clear weight of the case law, however, Rule 803(18) cannot save the October 2012 Report from exclusion. Courts routinely exclude hearsay opinions analogous to those in the report. First, courts have made clear that the author of a learned treatise must have no mission or bias, however noble:

[W]here [the author] possesses a personal interest in a litigable matter, a probability of bias exists which undermines the logic supporting the admission

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   of this material in evidence as an exception to the rule against hearsay.  Such

2   publications do not as a matter of course fall within the learned treatise

3   exception to the hearsay rule.

4   *See O'Brien v. Angley*, 407 N.E.2d 490, 494 (Ohio 1980); *accord In re Welding Fume*

5   *Prods. Liab. Litig.*, 534 F. Supp. 2d 761, 765 (N.D. Ohio 2008) (observing that

6   learned treatises must have "'sufficient assurances of trustworthiness to justify

7   equating them with the live testimony of an expert,'" and stating that authors of such

8   treatises should "have no bias in any particular case" (quoting 2 McCormick on

9   Evidence § 321 (6th ed. 2006)).  In the medical malpractice case of *O'Brien*, for

10  example, the court declined to apply the learned treatise exception to "excerpts of the

11  editorial published in the Journal of the American Medical Association," as the

12  "editorial was not an authoritative exposition of medical theory or principle which

13  might be characterized as a 'learned treatise,' but was primarily an expression of

14  opinion by a physician concerning a controversial subject."  407 N.E.2d at 494.

15      Second, for a document to achieve the status of a learned treatise, mere

16  publication is not enough—even if the publication is well respected.  In *Meschino*, for

17  example, the plaintiff sought to introduce articles published in *Health Devices*

18  *Magazine*, a medical periodical, in an action against a manufacturer based on brain

19  injuries related to the manufacturer's anesthesia machine.   *Meschino v. N. Am.*

20  *Drager, Inc.*, 841 F.2d 429, 431 (1st Cir. 1988).  The First Circuit affirmed the

21  exclusion of the hearsay evidence, despite an expert's testimony that the periodical

22  was "highly regarded":

23      In these days of quantified research, and pressure to publish, an article does not

24      reach the dignity of a "reliable authority" merely because some editor, even a

25      most reputable one, sees fit to circulate it. Physicians engaged in research may

26      write dozens of papers during a lifetime. Mere publication cannot make them

27      automatically reliable authority.

28

*Meschino*, 841 F.2d at 434; *accord Glowczenski v. Taser Int'l, Inc.*, 928 F. Supp. 2d 564, 572-73 (E.D.N.Y. 2013) (declining to grant learned treatise status to several published medical and scientific periodicals: Forensic Science International, the Journal of Forensic and Legal Medicine, the American Heart Journal, the Canadian Medical Association Journal, and the journals of The American Heart Association and the American College of Emergency Physicians).   In fact, for a publication to be deemed "reliable authority," it should be peer reviewed and widely scrutinized.  *See U.S. v. Turner*, 104 F.3d 217, 221 (8th Cir. 1997) (refusing to apply learned treatise exception to an article that was "not peer-reviewed," but was rather "an opinion piece or an editorial, not a scholarly article"); *United States v. Martinez*, 588 F.3d 301, 312 (6th Cir. 2009) (refusing to apply learned treatise exception to evidence that "was not subjected to peer review"); *United States v. Jones*, 712 F.2d 115, 121 (5th Cir. 1983) (observing that a learned treatise must be subjected to "widespread collegial scrutiny").

In light of these principles, the October 2012 Report does not carry sufficient indicia of authority to reach the status of a learned treatise.   Through *QuarterWatch*, the ISMP hopes to advance an ideological objective, not engage in the dissemination of impartial, scientifically-grounded medical information.   Like the Journal of the American Medical Association publication excluded in *O'Brien*, the October 2012 Report is not "an authoritative exposition of medical theory or principle which might be characterized as a 'learned treatise,'" but is rather "an expression of opinion" on the "controversial subject" of antidepressant discontinuation.  *See* 407 N.E.2d at 494. Furthermore, although *QuarterWatch* is published (online), it is not a peer reviewed, scholarly study subject to collegial scrutiny.  *See, e.g.*, *Turner*, 104 F.3d at 221.

Even if *QuarterWatch* fell within a hearsay exception—which it does not— Plaintiff would still have to establish that *QuarterWatch* satisfied the reliability requirements of Rule 702 and *Daubert* before it could be admitted.   The inherent methodological limitations of the FAERS data upon which *QuarterWatch* is based

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO QUARTERWATCH

undermines *QuarterWatch*'s methodological reliability.  *See* Background at 2-3; *see also Soldo v. Sandoz Pharms. Corp.*, 244 F. Supp. 2d 434, 542 (W.D. Pa. 2003) ("The same problems that make case reports and ADEs unreliable for purposes of analyzing a medical causation issue also undermine reliance on a few medical treatises.  A second-hand statement in a treatise that merely recites anecdotal information from case reports can be no more reliable than the case reports themselves."); *Glastetter v. Novartis Pharms. Corp.*, 107 F. Supp. 2d 1015, 1035 n.18 (E.D. Mo. 2000) ("The Court does not believe that texts and treatises that draw an "association" between Parlodel and vasoconstriction based upon [unreliable and inadmissible] case reports make such texts and treatises any more reliable than the case reports on which they rely."), *aff'd*, 252 F.3d 986, 990 (8th Cir. 2001) ("Like the district court, we find that these texts do not present persuasive scientific evidence that Parlodel causes vasoconstriction.").

In one analogous case, the court excluded FDA adverse reaction reports concerning the drug Cipro and heart attacks, as well as material from the Physician's Desk Reference (PDR) on the same topic. *Swallow v. Emergency Med. of Idaho, P.A.*, 67 P.3d 68, 73-74 (Idaho 2003).  The court upheld the lower court's reasoning that these materials were not sufficiently reliable evidence of a causal relationship to pass muster under Rule 702 and *Daubert*.  *See id.*  The FDA reports were particularly problematic because

> [T]he FDA regulations concerning reporting of adverse reactions to drugs, 21 CFR §§ 201.57(3) and 314.80, clearly indicate that the reporting requirement is purely associational; no causal relationship need be proved and reports must be submitted whether or not the noted reaction is considered drug related. . . . There is no scientific evidence before me that has been tested, published, peer-reviewed or otherwise shown to be reliable which establishes that Cipro in any amount can cause heart attacks.  Thus, the proffered testimony and evidence . . .

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  really amounts to nothing more than speculation based on a temporal

2  concurrence of events.

3  *Id.* (citing lower court opinion).

4  The FAERS data concerning Cymbalta and discontinuation symptoms is also

5  purely associational; the FDA does not require proof of a causal relationship between

6  Cymbalta and a reported event. *See* Background at 2; *see also Swallow*, 67 P.3d at 73.

7  The FDA acknowledges that reports often do not contain enough detail to properly

8  evaluate an adverse event. *See* Background at 2. Because *QuarterWatch* relies on

9  data that could not satisfy the reliability requirements of Rule 702 and *Daubert*, the

10  methodological reliability of *QuarterWatch* itself is suspect. *See Glastetter*, 7 F.

11  Supp. 2d at 1035 n.18.

12  **D.     Rule 703 Does Not Enable Plaintiff's Experts to Transmit Statements from**

13  **the *QuarterWatch* Report to the Jury.**

14  The expert reports of Dr. Glenmullen and Dr. Morris quote the October 2012

15  *QuarterWatch* Report at length. Both Dr. Glenmullen and Dr. Morris merely parrot

16  the October 2012 Report's statements, without conducting any independent analysis

17  of their own. *See* Background at 3; *see also* Lilly's Mot. to Exclude the Expert

18  Testimony of Joseph Glenmullen, Dkt. #130 (Mar. 4, 2015), at 21; Lilly's Mot. to

19  Exclude the Expert Testimony of Louis Morris, Dkt. #131 (Mar. 4, 2015), at 20-22.

20  Nonetheless, Lilly anticipates that Plaintiff will improperly attempt to use Rule

21  703 to introduce the October 2012 Report through Dr. Glenmullen or Dr. Morris. To

22  the extent that Plaintiff believes that Rule 703 will enable it to transmit the hearsay

23  opinions of the October 2012 Report through the conduit of its experts and straight to

24  the jury, Plaintiff is severely mistaken.

25  To be sure, Rule 703 allows an expert to base an opinion on hearsay facts and

26  data if and only if  "experts in the particular field would reasonably rely on those

27  kinds of fact and data." Fed. R. Evid. 703. But it is clear beyond peradventure that

28  "Rule 703 does not permit an expert witness to circumvent the rules of hearsay by

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   testifying to the opinions of other experts." *Mesfun v. Hagos*, 2005 WL 5956612, at

2   *18-19 (C.D. Cal. Feb. 16, 2005); *see also Cholakyan v. Mercedes-Benz, USA, LLC*,

3   281 F.R.D. 534, 546-47 (C.D. Cal. 2012) (excluding expert declaration that "quote[d]

4   extensively from" two investigative reports, while offering "no independent analysis

5   or opinion regarding [their] validity," thereby demonstrating expert's intent to "serve

6   as a mouthpiece for others"); *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d

7   Cir. 2013) (noting that "a party cannot call an expert simply as a conduit for

8   introducing hearsay under the guise that the testifying expert used the hearsay as the

9   basis of his testimony" (citation and internal quotation marks omitted)); *United States*

10  *v. Tomasian*, 784 F.2d 782, 786 (7th Cir. 1986) ("Rule 703 does not sanction the

11  simple transmission of hearsay; it only permits an expert opinion based on hearsay.");

12  29 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure:

13  Evidence § 6273 (Sept. 2014) ("Rule 703 does not authorize admitting hearsay on the

14  pretense that it is the basis for expert opinion when, in fact, the expert adds nothing to

15  the out-of-court statements other than transmitting them to the jury.  In such a case,

16  Rule 703 is simply inapplicable and the usual rules regulating the admissibility of

17  evidence control."); *United States v. Grey Bear*, 883 F.2d 1382, 1392-93 (8th Cir.

18  1989) ("[Rule] 703 does not permit an expert witness to circumvent the rules of

19  hearsay by testifying that other experts, not present in the courtroom, corroborate his

20  views"); *United States v. Tran Trong Cuong*, 18 F.3d 1132, 1143 (4th Cir. 1994) ("We

21  also find it was error to allow Dr. Macintosh to bolster his opinion evidence by

22  testifying that his conclusions as to Tran's actions were 'essentially the same' as those

23  of a Dr. Stevenson, who did not testify . . . .").

24      Applying this well-settled principle here: Because Dr. Glenmullen and Dr.

25  Morris did not base their opinions on the October 2012 *QuarterWatch* report, but

26  instead merely regurgitated its findings, Rule 703 is inapplicable. Neither Dr.

27  Glenmullen nor Dr. Morris may testify to the statements contained in the October

28

MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO QUARTERWATCH

1  2012 Report.  *See, e.g.*, *Mesfun*, 2005 WL 5956612, at *18-19; *Marvel Characters*,

2  726 F.3d at 136; *Tomasian*, 784 F.2d at 786 (7th Cir. 1986).[1]

3  **E.    Expert Testimony That Parrots the *QuarterWatch* Report Is Inadmissible.**

4          Lilly has separately moved to preclude both Dr. Glenmullen and Dr. Morris

5  from testifying to the statements in the October 2012 *QuarterWatch* Report because,

6  under Rule 702, such testimony would be inherently unreliable and irrelevant.  *See*

7  *See* Lilly's Mot. to Exclude the Expert Testimony of Joseph Glenmullen, Dkt. #130

8  (Mar. 4, 2015), at 21; Lilly's Mot. to Exclude the Expert Testimony of Louis Morris,

9  Dkt. #131 (Mar. 4, 2015), at 20-22; *see also In re Rezulin Prods. Liab. Litig.*, 309 F.

10  Supp. 2d 531, 546-47 (S.D.N.Y. 2004) (excluding expert testimony of diabetes

11  specialist in products liability litigation involving Rezulin, a diabetes drug, because

12  "merely repeating facts or opinions stated by other potential witnesses" could not help

13  the jury); *State Farm Fire & Cas. Co. v. Electrolux Home Prods., Inc.*, 980 F. Supp.

14  2d 1031, 1039 (N.D. Ind. 2013) (excluding defendant's warning and safety expert's

15  statistical testimony concerning clothes dryer susceptibility to fire as unreliable

16  because expert "did nothing additional to research the sources of the information, how

17  the data was compiled, or verify the reliability of the data" which she received from

18  the defendant); *United States v. Mejia*, 545 F.3d 179, 198 (2d Cir. 2008) ("The expert

19

20  [1] Even if Dr. Glenmullen or Dr. Morris reasonably relied on the 2012 October Report
    evidence to form their opinions—which they did not—such reasonable reliance would
21  not convert the 2012 October Report into substantive evidence.  *See* Fed. R. Evid. 703
22  Advisory Committee's Note.  To introduce the 2012 October Report as substantive
    evidence—that is, for the truth of the matter stated therein—Plaintiff must still
23  establish that it satisfies a hearsay exception.  *See id.*  Furthermore, although Rule 703
24  permits the proponent to "disclose" hearsay evidence upon which an expert's opinion
    is based to the jury, such disclosure is only for the limited purpose of helping the jury
25  evaluate the expert opinion—not for its substance—and the proponent may do so only
26  if the probative value in helping the jury evaluate the opinion substantially outweighs
    the prejudicial effect.  Disclosing *QuarterWatch* to the jury could not help it evaluate
27  the experts' opinions.  *See id.*; *see also Turner v. Burlington N. Santa Fe R. Co.*, 338
28  F.3d 1058, 1062 (9th Cir. 2003).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    may not, however, simply transmit that hearsay to the jury.  Instead, the expert must

2    form his own opinions by applying his extensive experience and a reliable

3    methodology to the inadmissible materials.  Otherwise, the expert is simply repeating

4    hearsay evidence without applying any expertise whatsoever, a practice that allows the

5    [proponent] to circumvent the rules prohibiting hearsay.") (citations and internal

6    quotation marks omitted).

7                                          **CONCLUSION**

8         For the foregoing reasons, Lilly respectfully requests that the Court exclude

9    evidence and testimony in the form of *QuarterWatch* reports, statements from

10   *QuarterWatch* reports, and references to *QuarterWatch* reports.

11

12        DATED: March 30, 2015

13                                               REED SMITH LLP

14

15                                        By   */s/ David E. Stanley*
                                                David E. Stanley
16                                              REED SMITH LLP

17                                              Michael X Imbroscio *(pro hac vice)*
                                                Phyllis A. Jones *(pro hac vice)*
18                                              Kathleen E. Paley *(pro hac vice)*
                                                COVINGTON & BURLING LLP
19
                                                Attorneys for Defendant
20                                              ELI LILLY AND COMPANY

21

22

23

24

25

26

27

28

*REED SMITH LLP*
*A limited liability partnership formed in the State of Delaware*

MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO QUARTERWATCH